UNITED STATES of America,
Plaintiff–Appellee,

v.

James Ralph SELLERS,
Defendant–Appellant.

No. 90–1216.

United States Court of Appeals,
Fifth Circuit.

March 1, 1991.

Rehearing Denied March 29, 1991.

---

4. *Id.*

Orbie S. Craft (Court-appointed), Craft, Brenemen & Wilson, Brandon, Miss., for defendant-appellant.

Ruth R. Harris, Asst. U.S. Atty., George Phillips, U.S. Atty., and James B. Tucker, Asst. U.S. Atty., Jackson, Miss., for plaintiff-appellee.

Before WISDOM, KING, and BARKSDALE, Circuit Judges.

KING, Circuit Judge:

James Ralph Sellers (Sellers) appeals his conviction and sentence for sixteen counts of knowingly and willfully disposing of methylethylketone, a hazardous waste, without obtaining a permit, a violation of the Resource Conservation and Recovery Act ("RCRA"), codified at 42 U.S.C. § 6928(d)(2)(A). Sellers contends that the district court erred (1) in its admission of certain testimony, (2) by its charge to the jury, and (3) in its application of the U.S. Sentencing Guidelines. Finding no error, we affirm the conviction and sentence.

I.

On March 5, 1989, residents in rural Jones County, Mississippi discovered sixteen 55-gallon drums of hazardous paint waste on an embankment of the Camp Branch Creek, which flows into the Leaf River. These drums were later determined to contain paint waste and methylethylketone (M.E.K.), a paint solvent, and one of the drums was found to be leaking. Sellers was indicted on October 16, 1989 on sixteen counts of violating 42 U.S.C. § 6928(d)(2)(A) for disposing of sixteen drums of hazardous waste without a permit on or about March 4 or 5, 1989. Sellers was tried January 8 through 11, 1990 in front of a jury. On the issue of guilt or innocence, the jury heard testimony from 14 government witnesses and two defense witnesses. The government witnesses testified about the discovery of the drums, the circumstances surrounding the waste's origin in Port Violet, Louisiana, and the fact that Sellers had been paid $45 per drum to dispose of the waste. In addition, the government called James William Ward (Ward), who testified that he had assisted Sellers in loading the 55-gallon drums in Louisiana and transporting them to Jones County, Mississippi where Ward and Sellers unloaded them. Ward testified that Sellers did not tell him what was in the drums, but did tell Ward that it was flammable. Subsequently, Ward voluntarily came forward and told the police about his involvement in dumping the drums. Testimony by other witnesses established that Sellers did not have a permit as required for disposing of hazardous waste, nor did he take the waste to a licensed disposal area. The government's last witness in its case in chief, Douglas E. Bourgeois (Bourgeois), was allowed to testify over Sellers's objection. Bourgeois testified that he had a conversation with Sellers in late April or sometime in May in which Sellers stated that he had been hauling waste chemicals and discarding them in a rural area outside Petal, Mississippi. During the conversation, Sellers referred to M.E.K., which he knew as a solvent used primarily to clean paint equipment.

The crux of Sellers's defense was that he denied dumping the paint waste in question. He testified that it was Ward alone who had dumped the drums into Camp Branch Creek, although he admitted that his family owned property in Jones County near the site of the dumping.

After deliberation, the jury found Sellers guilty of all sixteen counts of the indictment. On March 14, 1990, Sellers was sentenced to 41 months imprisonment on each count, with the sentences to run concurrently. In addition, Sellers was sentenced to three years of supervised release and was ordered to make restitution to the State of Mississippi of $6,130.70, the amount required to clean up the hazardous waste site. Sellers also received a special assessment of $800. Sellers filed a timely notice of appeal.

## II.

On appeal, Sellers makes three challenges to his conviction and sentence. Sellers contends that the district court erred 1) by admitting testimony that he contends is inadmissible under Fed.R.Evid. 403 and 404(b), 2) by failing to give the jury a requested charge regarding the knowledge required to violate § 6928, and 3) by its application of the U.S. Sentencing Guidelines ("Guidelines" or "U.S.S.G.") in calculating Sellers's sentence. We address each contention in turn.

## A. Admission of Testimony

Sellers first contends that the district court erred by admitting the testimony of Bourgeois. Sellers claims that Bourgeois testified that sometime in late April or May, 1989 Sellers stated that he was, *at that time*, hauling chemicals and dumping them outside of Petal, Mississippi. Sellers argues that this evidence was inadmissible under Fed.R.Evid. 403 and 404(b).[1] We review a trial judge's admission of evidence

under an "abuse of discretion" standard. *United States v. Williams*, 900 F.2d 823, 827 (5th Cir.1990).

Bourgeois's testimony, Sellers argues, fails to meet the two prong test we announced in *United States v. Beechum*, 582 F.2d 898, 911 (5th Cir.1978) (en banc). In *Beechum*, we articulated the test for when evidence of extrinsic offenses may be admitted. We stated:

First, it must be determined that the extrinsic offense evidence is relevant to an issue other than the defendant's character. Second, the evidence must possess probative value that is not substantially outweighed by its undue prejudice and must meet the other requirements of rule 403.

Sellers argues that Bourgeois's testimony was not relevant to any issue other than the defendant's character because Bourgeois testified that Sellers was hauling and dumping waste chemicals one and one-half to three months after the dumping charged in the indictment, and that Bourgeois did not clearly state the nature of the waste chemicals, or that those chemicals were listed as hazardous under the regulations.

Sellers also argues that the probative value of Bourgeois's testimony was substantially outweighed by the danger of unfair prejudice and confusion of the issues. His sole defense, he argues, was that he did not dump the materials but that his alleged accomplice dumped them. The trial judge, he argues, allowed the evidence to be admitted because it showed that Sellers knew that the charged conduct was illegal and that M.E.K. was a hazardous substance. Sellers argues that the district court made knowledge of these matters a non-issue, however, because it failed to require the jury to find that he knew the materials were hazardous.

1. Fed.R.Evid. 404(b) prohibits evidence of "other crimes, wrongs, or acts ... to prove the character of a person in order to show action in conformity therewith." This evidence may be admitted "as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Fed.R.Evid.

403 states that "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury ... or needless presentation of cumulative evidence."

Bourgeois's testimony prejudiced Sellers, he contends, because it made him appear to be a habitual waste dumper, when the charged conduct occurred in a single episode. Sellers also argues that because the district court admitted Bourgeois's testimony that we cannot tell whether the jury convicted Sellers of the acts for which he was indicted or for the extrinsic offense that Bourgeois reported. The court instructed the jury that the government must prove guilt of the offenses covered in the indictment, which alleged violations on March 4 or 5, 1989. The court then advised the jury that they were not bound by those dates, but could convict for offenses reasonably close to that date. Sellers argues that the jury might have believed that Sellers did not dump the barrels charged in the indictment and yet nevertheless have convicted him because they thought he was guilty of the activities testified to by Bourgeois.

The district court decided to admit the testimony of Bourgeois because the court viewed the testimony as an admission of Sellers's knowledge of the regulations, of the character and nature of M.E.K., and that M.E.K. is a hazardous material. While it is unclear from the testimony whether Sellers was referring to the charged March 4 dumping in his discussion with Bourgeois, or whether Sellers was referring to another dumping incident, it was admissible in either case. If Sellers was referring to the dumping for which he was charged, his statements would be admissible as an admission under Fed.R.Evid. 801(d)(2).

Even if Sellers was referring to another episode of dumping, the statement would be admissible to establish Sellers's knowledge that he was dumping M.E.K.—an element of a violation of § 6928. Contrary to Sellers's argument, the government still had the burden to establish that Sellers knew that he was dumping waste, as discussed in Part II.B. of this opinion. In addition, this testimony showed that Sellers's dumping of the drums was not a mistake or accident. The probative value of this information to establish these elements outweighed the possible prejudice that would have resulted from the jury's knowledge of a separate dumping of M.E.K. by Sellers. This is not a case where a defendant was convicted by prejudicial evidence of other acts because he appeared to be a habitual offender when the government lacked evidence of the actual incident for which he was charged. Rather, this testimony is admissible either as an admission, or for the permissible purpose of establishing the extent of Sellers's knowledge of his acts. Thus, Sellers's argument is without merit.

## B. Jury Charge

Sellers next contends that the district court erred in refusing to give a jury instruction requested by Sellers. In reviewing a challenge to a jury charge, we must determine whether the court's charge, as a whole, was a correct statement of the law. When the complaint is that the trial court refused to give a requested instruction, this court must determine whether this refusal was an abuse of discretion. *United States v. Rochester*, 898 F.2d 971, 978 (5th Cir.1990). The instruction is reviewed in the context of the trial as a whole to determine whether it correctly reflects the issues and the law. *United States v. Casto*, 889 F.2d 562, 566 (5th Cir.1989), *cert. denied*, —— U.S. ——, 110 S.Ct. 1164, 107 L.Ed.2d 1067 (1990).

The district court gave the following instructions:

In order to establish the offenses charged in the indictment, the Government must prove each one of the following elements by proof beyond a reasonable doubt.

First. That the Defendant knowingly disposed of, or commanded and caused others to dispose of, wastes as charged in the indictment.

Second. That the Defendant knew what the wastes were.

Third. That the wastes were listed or identified or characterized by the United States Environmental Protection Agency, known as E.P.A., as a hazardous waste

pursuant to the Resource Conservation and Recovery Act, R.C.R.A.

And Fourth. That the Defendant had not obtained a permit from either the E.P.A. or the State of Mississippi authorizing the disposal under the Resources Conservation and Recovery Act.

Although the Government must prove that the waste disposed of was listed or identified or characterized by the E.P.A. as a hazardous waste, the Government is not required to prove that the Defendant knew that the waste was a hazardous waste within the meaning of the regulations. In other words, the Government need only prove that the Defendant knew what the waste was; that is, paint and paint solvent waste, along with the other essential elements the Court has previously given you.

However, the Government is not required to establish that the waste in question actually entered the environment, was emitted into the air, or discharged into water. It is sufficient for the Government to prove that the hazardous waste was placed into or on the land in such a manner that it could enter the environment, the air, or water, including ground water.

The term hazardous waste, as used in the R.C.R.A. statute, includes any refuse and other discarded or abandoned material, including solid, liquid or semi-solid material resulting from industrial or commercial operations and community activities, which because of its quantity, concentration, or physical chemical or infectious characteristics may; A, cause or significantly contribute to an increase in serious, irreversible, or incapacitating reversible illness; or B, pose a substantial presence or potential hazard to human health or the environment if improperly treated, stored, transported, or disposed of, or otherwise managed, and which has been identified or listed as a hazardous waste by the United States Environmental Protection Agency.

In his objections to the district court's proposed jury charge, Sellers requested that the district court give the following instruction:

Second: that the Defendant knew or reasonably should have known that the substance was waste;

Or alternatively:

that the Defendant knew or reasonably should have known that the substance was waste and that the waste could be harmful to persons or the environment if ... improperly disposed of.

The applicable statute, 42 U.S.C. § 6928(d)(2)(A), provides criminal penalties for "[a]ny person who ... knowingly treats, stores, or disposes of any hazardous waste identified or listed under this subchapter ... without a permit under this subchapter or pursuant to ... [33 U.S.C. § 1411 et seq.]"

On appeal, Sellers argues that the jury charge should have required the government to prove that Sellers knew that the paint waste could be hazardous or harmful to persons or the environment. Sellers argues that a "reading of the statute involved [42 U.S.C. § 6928] leads to the conclusion that Congress intended to punish only knowing violations."

In the Supreme Court case of *United States v. International Minerals & Chem. Corp.*, the defendant corporation challenged its conviction for violating I.C.C. regulations while shipping sulfuric acid in interstate commerce. 402 U.S. 558, 91 S.Ct. 1697, 29 L.Ed.2d 178 (1971). It claimed that because it was unaware of the regulations, it could not have "knowingly" violated them as required under 18 U.S.C. § 834(f). The Supreme Court determined that although Congress required some *mens rea* by its use of the word "knowingly" in the statute, knowledge of the regulation was not part of this *mens rea* requirement. Rather, "knowingly" was intended to apply to mistakes of fact such as if "a person thinking in good faith that he was shipping distilled water" actually shipped dangerous acid. *Id.* at 563, 91 S.Ct. at 1700. The Court stated that if "[p]encils, dental floss [and] paper clips" were regulated, knowledge of the regulations would have to be an element of the offense because of substantial due process questions.

*Id.* at 564, 91 S.Ct. at 1701. However, "where ... dangerous or deleterious devices or products or obnoxious waste materials are involved, the probability of regulation is so great that anyone who is aware that he is in possession of them or dealing with them must be presumed to be aware of the regulation." *Id.* at 564–65, 91 S.Ct. at 1701–02. Thus, when a person knowingly possesses an instrumentality which by its nature is potentially dangerous, he is imputed with the knowledge that it may be regulated by public health legislation.[2] *See also United States v. Freed,* 401 U.S. 601, 609, 91 S.Ct. 1112, 1118, 28 L.Ed.2d 356 (1971) (possession of hand grenades); *United States v. Dotterweich,* 320 U.S. 277, 281, 64 S.Ct. 134, 136, 88 L.Ed. 48 (1943) (adulterated and mislabeled drugs); *United States v. Balint,* 258 U.S. 250, 252, 42 S.Ct. 301, 302, 66 L.Ed. 604 (1922) (narcotics).

There is support for Sellers's argument as it relates to § 6928 in the opinions of several other circuits. *United States v. Dee,* 912 F.2d 741, 745–46 (4th Cir.1990) (jury instruction that defendants had to know "that the substances involved were chemicals" failed to instruct jury that defendants also had to know chemicals were hazardous was error, but harmless in light of overwhelming evidence); *United States v. Hoflin,* 880 F.2d 1033, 1039 (9th Cir. 1989) (affirmed instruction that defendant must know "that the chemical wastes had the potential to be harmful to others or the environment, or in other words, it was not an innocuous substance like water"); *United States v. Greer,* 850 F.2d 1447, 1451 (11th Cir.1988) (same instruction used); *Johnson & Towers,* 741 F.2d at 668 (defendant must know that waste was hazardous, because "[c]ertainly, ['a] person thinking in good faith that he was [disposing of] distilled water when in fact he was [disposing of] some dangerous acid would not be covered'") (quoting *International Minerals,* 402 U.S. at 563–64, 91 S.Ct. at 1700–01) (brackets in original). We need not reach this issue, however, because we have concluded that it is being raised for the first time on appeal and we find that the district court's failure to give a more complete instruction was not plain error.

■ At trial, Sellers requested an instruction that the government must prove that "the Defendant knew or reasonably should have known that the substance was waste." This instruction was not necessary as the district court's instruction explicitly required the government to prove that "the Defendants knew what the wastes were ... that is, paint and paint solvent waste."

■ In the alternative, Sellers requested that the trial court instruct the jury that "the Defendant knew or reasonably should have known that the substance was waste and that the waste could be harmful to persons or the environment if ... improperly disposed of." Although the district

**2.** The RCRA is a regulatory statute intended to protect public health and as such, it should be construed to effectuate its regulatory purpose. *United States v. Johnson & Towers, Inc.,* 741 F.2d 662, 666 (3rd Cir.1984). Congress enacted the RCRA, 42 U.S.C. §§ 6901–6991, to regulate the treatment, storage, and disposal of hazardous wastes by monitoring wastes from their creation until their permanent disposal. *Matter of Commonwealth Oil Refining Co.,* 805 F.2d 1175, 1177 (5th Cir.1986). The purpose of the RCRA regulatory scheme is to provide "nationwide protection against the dangers of improper hazardous waste disposal." H.R.Rep. No. 1491, 94th Cong., 2d Sess. 11, *reprinted in* 1976 U.S. Code Cong. & Admin.News 6238, 6249. Congress, through the RCRA, set up a regulatory scheme under which transporters of waste are to "ensure that those hazardous wastes placed in the flow of commerce are handled in a manner protective of human health and environmental

vitality and delivered only to a facility or site adequate to properly dispose of such wastes" and to specifically protect against the unloading of hazardous wastes along the roadside or at landfills. H.R.Rep. No. 1491, 94th Cong., 2d Sess. 27, *reprinted in* 1976 U.S.Code Cong. & Admin.News 6238, 6265. Congress thus intended to set up a regulatory scheme that required transporters of potentially regulated waste to transport and dispose of that waste only in manners protective of public health and the environment.

The RCRA was amended in 1978 and 1980 to expand the coverage of its criminal provisions. *See* Pub.L. 96–482, § 13(5); Pub.L. 95–609, § 7(k)(2). The impetus for this second amendment was the fact that "[t]he disposal of wastes, especially hazardous wastes, is a worsening national problem." S.Rep. No. 172, 96th Cong., 2nd Sess. 1, *reprinted in* 1980 U.S.Code Cong. & Admin.News 5019, 5019.

judge did not give his reason for rejecting this instruction, it is clear that this instruction is incorrect. There is no requirement that the defendant must know that the waste would be harmful "if improperly disposed of." Under Sellers's construction, arguably he would not be liable if he disposed of the harmful waste in what he considered to be proper containers. Because this alternative instruction suggested by Sellers is legally deficient, the district court was correct in rejecting it.

■■■ Focusing only on the first half of this second requested instruction, Sellers argues on appeal that the district court erred by not giving an instruction that the government must prove that the defendant knew that the waste was hazardous or dangerous. Because Sellers raises this ground for challenging the jury charge for the first time on appeal, even an inaccurate instruction will be upheld in the absence of "plain error." *United States v. Gammage*, 790 F.2d 431, 434 (5th Cir.1986). Error in a charge is plain only when, considering the entire charge and evidence presented against the defendant, there is a likelihood of a grave miscarriage of justice. *United States v. Welch*, 810 F.2d 485, 487 (5th Cir.1987).

■■■ Assuming, *arguendo*, that the district court should have charged the jury that the government was required to prove that the defendant knew that the substance he disposed of was potentially hazardous or dangerous to persons or the environment, in the present case this omission was not plain error. It is clear that paint and paint solvent waste, by its very nature, is potentially dangerous to the environment and to persons. Thus, it should have come as no surprise to Sellers that the disposal of that waste is regulated. The evidence presented at trial established that Sellers knew that the waste he was disposing included M.E.K., a paint solvent, and that this substance was extremely flammable. There can be no doubt that Sellers knew that the substance he was disposing of was potentially dangerous to human beings and the environment and that regulations, therefore, would exist governing the manner of

its disposal. Under these circumstances, we cannot say that the jury charge as a whole constituted "plain error." Therefore, we find no ground for reversal.

C. Application of Sentencing Guidelines

■■ Lastly, Sellers contends that the district court erred during its sentencing of Sellers by erroneous factual findings and misapplication of the Guidelines. In reviewing a challenge to a sentence under the Guidelines, we must accept the factual findings of the district court unless clearly erroneous, but we fully review its application of the Guideline for errors of law. 18 U.S.C. § 3742(e); *United States v. Otero*, 868 F.2d 1412, 1414 (5th Cir.1989).

■■■ The district court, in determining Sellers's sentence, began with a base offense level of 8 under U.S.S.G. § 2Q1.2 (Mishandling of Hazardous or Toxic Substances or Pesticides). This offense level was increased by four levels because it "involved a discharge, release, or emission of a hazardous or toxic substance" pursuant to § 2Q1.2(b)(1)(B). In addition, there was a four level increase because the offense "involved transportation, treatment, storage, or disposal without a permit" pursuant to § 2Q1.2(b)(4). Based on a criminal history of IV and an offense level of 16, Sellers was sentenced to 41 months in prison.

Sellers challenges the upward adjustment to the offense level for the discharge of a hazardous substance. He contends that the increase was incorrect because the notes to the Guidelines state that § 2Q1.2(b)(1) "assumes a discharge or emission into the environment *resulting in actual environmental contamination.*" U.S.S.G. § 2Q1.2 Application Note 5 (October, 1987) (emphasis added). Sellers contends that because the waste was discovered one day after being dumped, there is little likelihood that it actually contaminated the environment, and even if so, it was unintentional. In addition, Sellers contends that the district court failed to consider a possible two level downward departure for the small amount of M.E.K. which may have escaped.

418

The district court specifically found, based on the evidence, that "one of the barrels was leaking and that [the offense involved] a discharge, release, or emission of a hazardous or toxic substance into the environment." Because of evidence which established the toxicity of M.E.K., the district court may have inferred actual environmental contamination from the leak, even for one day. *See United States v. Bogas*, 920 F.2d 363 (6th Cir.1990) (applied § 2Q1.2(b)(1) where no actual harm, but some visual contamination of soil, detectable contamination of atmosphere, and probable water contamination despite nearby foundry sand filter which would prevent contamination of water supply). Thus, this factual finding was not clearly erroneous and the district court correctly applied the Guidelines. Sellers did not present any evidence during trial or the sentencing phase upon which to base a finding that the discharge was negligent. Therefore, the district court did not err in refusing to make a two level downward departure. We affirm the sentence imposed by the district court.

### III.

Based on the foregoing, we affirm the conviction and sentence imposed on James Ralph Sellers by the district court.

AFFIRMED.