UNITED STATES of America,
Plaintiff–Appellee,

v.

Troy Clayton KLEINEBREIL,
Defendant–Appellant.

No. 90–8375.

United States Court of Appeals,
Fifth Circuit.

July 7, 1992.

Mike DeGeurin, Stanley G. Schneider, Schneider & McKinney, Houston, Tex., for defendant-appellant.

Diane D. Kirstein, Asst. U.S. Atty., Ronald F. Ederer, U.S. Atty., San Antonio, Tex., for plaintiff-appellee.

Before BRIGHT,[1] JOLLY, and BARKSDALE, Circuit Judges.

BARKSDALE, Circuit Judge:

Convicted on marijuana (two counts) and assault of a federal officer charges, Troy

---

1. Senior Circuit Judge of the Eighth Circuit, sitting by designation.

Clayton Kleinebreil bases error on the denial of his motion to suppress, the jury instruction on his defense to the assault charge, and the application of the Sentencing Guidelines.[2] We AFFIRM the convictions; but, because the district court double-counted adjustments to the group offense levels for the marijuana and assault convictions, we VACATE the sentences and REMAND for resentencing.

## I.

In 1988, more than a year prior to his arrest, the Austin Police Department began investigating a marijuana organization believed to include Kleinebreil, and to be shipping marijuana in rental cars from Austin to Atlanta, Georgia. That December, a trained dog alerted to a suitcase that was later picked up by Kleinebreil at the Austin airport baggage claim area. Kleinebreil consented to a search of the bag, but no contraband was found. Later that month, Austin police officers learned that Jill Jacobs, Kleinebreil's common-law wife, had made a $1,056 cash purchase of first class, round-trip airfare between Austin and Atlanta. The ticket was issued in the name of Tim Jacobs. Surveillance was established at the Austin airport; and, when the flight arrived, the officers recognized Kleinebreil from their earlier encounter. Kleinebreil agreed to allow the officers to search his carry-on bag, which contained over $76,000 in cash. He first denied ownership of the money, stating that someone on the airplane must have put it in his bag; later, he said that he might be "going to buy a race car for a friend". The cash was seized, and Kleinebreil was given a receipt.

On the morning of May 10, 1989, during surveillance at the Austin airport, officers observed Kleinebreil, driving a Trans–Am, pick up Danny Cook. The surveillance team followed the Trans–Am to a nearby fast-food restaurant. After driving behind the restaurant, the Trans–Am left the parking lot, followed by a Chevrolet rental car. Both cars stopped at a gas station, where a Hispanic male was observed talking to Kleinebreil and Cook. When the cars left, the Trans–Am, driven by Kleinebreil, was followed by the rental car, driven by Cook. After the Trans–Am turned onto another road, the rental car continued eastbound.[3]

The rental car was stopped east of Austin near Bastrop; and Cook consented to a search of the vehicle. After approximately 100 pounds of marijuana were found in the trunk, Cook was arrested. Fearing that Kleinebreil might learn of Cook's arrest and destroy evidence of drug-trafficking, DEA agents, Austin police officers, and sheriff's deputies assigned to an Organized Crime Task Force obtained a warrant that night to search Kleinebreil's home.

The warrant was signed by the magistrate around 10:30 p.m. Approximately an hour later, when Kleinebreil and his wife were in bed, the agents and officers went to his home to execute the warrant. They had previously received information that Kleinebreil had a gun. When they arrived at his residence, one of the master bedroom windows at the front of the house was open. The officers testified that they knocked and announced their purpose two or three times, but received no response.[4] After breaking down the front door, the officers entered the residence; and Kleinebreil began shooting at them. In the gunfire exchange that followed, Deputy Sheriff Lewis was shot in the hand; Austin police officer Medlicott, in the chest (fortu-

**2.** Kleinebreil also appealed from the denial of his motion for a hearing pursuant to *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), concerning the government's peremptory strikes of two black jurors. We remanded for a *Batson* hearing; and, after the hearing, the district court held that the strikes were not racially motivated. Kleinebreil has not appealed from that ruling; and this issue is, therefore, abandoned.

**3.** As stated, the organization under investigation was believed to be using rental cars to transport marijuana from Austin east to Atlanta.

**4.** DEA Agent Childress, who interviewed Jill Jacobs after the shooting incident described *infra,* testified that she told him that she heard the officers shouting "Police!" "right before the gunfire started." Jacobs testified, however, that she heard no knocks at the door, and didn't hear anyone say "police" until after the shooting ended.

nately, he was wearing a bullet-proof vest); and Kleinebreil, in his right arm and shoulder area.

During the subsequent search of the residence, officers found two guns, three grams of marijuana, a radio frequency detector,[5] and a key and a receipt for a mini-warehouse. They also found marijuana residue in the trunk of Kleinebreil's car. A warrant was then obtained for the mini-warehouse, where the officers found marijuana debris and packing material, and a magazine with Kleinebreil's name and address on it.

In a four-count indictment, Kleinebreil was charged with conspiracy to possess with intent to distribute marijuana, in violation of 21 U.S.C. §§ 841(a)(1) and 846 (count one); possession with intent to distribute marijuana, in violation of 21 U.S.C. § 841(a)(1) (count two); assault of a federal officer, in violation of 18 U.S.C. § 111(a)(1) and (b) (count three); and using a firearm during and in relation to the drug trafficking crimes charged in counts one and two, in violation of 18 U.S.C. § 924(c)(1) (count four). He was convicted on the first three counts, acquitted on the fourth. He received, *inter alia*, consecutive sentences of 30 months of imprisonment each on counts one and two, and 91 months on count three, for a total of 151 months.

## II.

Kleinebreil challenges the denial of his suppression motion, the jury instruction on the assault charge, and the application of the Guidelines.

**5.** DEA Agent Childress testified that radio frequency detectors are commonly used in narcotics trafficking to detect body wires worn by police or informants.

**6.** As for the airport, Kleinebreil only summarizes his allegations in the motion to suppress; he does not present any arguments or authorities regarding that issue, contrary to Fed. R.App.P. 28(a)(4) (version in effect until 12/1/91) ("The argument shall contain the contentions of the appellant with respect to the issues presented, and the reasons therefor, with citations to the authorities, statutes and parts of the record relied on."). Accordingly, we do not

### A.

Kleinebreil moved prior to trial to suppress statements he made and evidence seized from him at the Austin airport in December 1988, as well as the evidence seized from his home and car, and the mini-warehouse. After a hearing, the district court denied the motion; and Kleinebreil challenges that ruling.[6]

While we review questions of law *de novo*, "[i]n reviewing a trial court's ruling on a motion to suppress based on live testimony at a suppression hearing, the trial court's purely factual findings must be accepted unless clearly erroneous, or influenced by an incorrect view of the law, and the evidence must be viewed most favorabl[y] to the party prevailing below."

*United States v. Muniz–Melchor*, 894 F.2d 1430, 1433–34 (5th Cir.), *cert. denied*, 495 U.S. 923, 110 S.Ct. 1957, 109 L.Ed.2d 319 (1990) (quoting *United States v. Maldonado*, 735 F.2d 809, 814 (5th Cir.1984)).

### 1.

With respect to the search of his home, Kleinebreil concedes that, in light of the events earlier on the day the warrant was issued, there was probable cause to believe that he was involved in drug-trafficking; but he contends that the search warrant affidavit was insufficient to demonstrate probable cause to believe that any evidence of such activities could be found in his home.[7] According to Kleinebreil, the only specific information indicating that such evidence could be found in his home was an informant's statement that drugs were there a year earlier.

address this aspect of the suppression issue. *See, e.g., United States v. Valdiosera–Godinez,* 932 F.2d 1093, 1099 (5th Cir.1991) (issue listed in statement of issues, but not argued in brief, considered waived).

**7.** In his motion to suppress, Kleinebreil contested the search of his car on the grounds of lack of a warrant or probable cause. Because the warrant for the search of his home authorized the search of "all vehicles on the curtilage thereof", the legality of the vehicle search is necessarily included in our discussion of the legality of the search of his home.

We engage in a two-step review of the trial court's denial of [Kleinebreil's] motion to suppress. The first step requires us to decide whether the good-faith exception to the exclusionary rule applies. If the good-faith exception applies, we need not reach the question of probable cause.

*United States v. Webster,* 960 F.2d 1301, 1307 (5th Cir.1992) (citations omitted).[8] In *United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), the Supreme Court held that, even if an affidavit upon which a search warrant is based is insufficient to demonstrate probable cause, evidence seized by law enforcement officers acting in objectively reasonable good-faith reliance upon the warrant is admissible. 468 U.S. at 922–23, 104 S.Ct. at 3420–21. "Issuance of a warrant by a magistrate normally suffices to establish good faith on the part of law enforcement officers who conduct a search pursuant to the warrant." *United States v. Craig,* 861 F.2d 818, 821 (5th Cir.1988). There are four exceptions to this general rule; but only the third is at issue here: whether the warrant was based on an affidavit "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable". *Leon,* 468 U.S. at 923, 104 S.Ct. at 3421 (citation omitted).[9]

█ The eight-page affidavit, prepared by DEA Special Agent Childress, states in considerable detail that, based upon his experience and training, individuals who deal in illegal controlled substances often keep evidence of that activity in their homes. The affidavit provides information furnished by a confidential informant, and relates at length the surveillance activities involving Kleinebreil, including the activities on the day the warrant was applied for and received. At the suppression hearing, Agent Childress testified that the officers had feared that Kleinebreil would learn of Cook's arrest and begin hiding, transferring, or destroying evidence.[10] Although some of the information contained in the affidavit concerns events that occurred as much as a year prior to issuance of the warrant, the affidavit "clearly shows a long-standing, ongoing pattern of criminal activity," *continuing through the date of issuance of the warrant. See Craig,* 861 F.2d at 822. Moreover, the type of evidence sought—records of drug-trafficking activity—"is of the sort that can reasonably be expected to be kept for long periods of time in the place to be searched." *Id.* at 823.

We conclude that the affidavit contained sufficient "indicia of probable cause". Accordingly, the officers' good-faith reliance on the warrant was objectively reasonable. Because the good-faith exception to the exclusionary rule applies, we do not reach the issue of probable cause.[11]

---

8. In district court, the government relied on the good-faith exception; and after the suppression hearing, the court took the motion to suppress under advisement. Although the record reflects that the district court denied the motion, the record does not reflect whether the court, in doing so, relied on the good-faith exception or a finding of probable cause.

9. The four exceptions are:

Suppression ... remains an appropriate remedy [1] if the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth[;] ... [2] in cases where the issuing magistrate wholly abandoned his judicial role ...[;] [3] [if] a warrant [is] based on an affidavit "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable[ ]"; [and] [4] ... [where the] warrant [is] so facially deficient—*i.e.,* in failing to particu-

larize the place to be searched or the things to be seized—that the executing officers cannot reasonably presume it to be valid.
*Leon,* 468 U.S. at 923, 104 S.Ct. at 3421 (quotations and citations omitted).

10. As discussed *supra,* Cook was arrested east of Austin in a rental car on May 10, after being seen that day with Kleinebreil, including being picked up at the airport by him.

11. Even under that more exacting standard, in reviewing the sufficiency of an affidavit for a search warrant, our duty "is simply to ensure that the magistrate had a 'substantial basis for ... conclud[ing]' that probable cause existed." *Illinois v. Gates,* 462 U.S. 213, 238–39, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983) (quoting *Jones v. United States,* 362 U.S. 257, 271, 80 S.Ct. 725, 736, 4 L.Ed.2d 697 (1960)) (alteration in *Gates*). "The task of the issuing magistrate is simply to make a practical, commonsense decision whether, given all the circumstances set forth in the

## 2.

With respect to the mini-warehouse, Kleinebreil maintains that the search was improper for three reasons: the government failed to prove that a valid warrant existed; there was no probable cause to believe that evidence could be found at the warehouse; and, any evidence supporting probable cause was the fruit of the illegal search of his home. His first contention is meritless. The record establishes that a search warrant was issued for the warehouse; and a copy of that warrant is attached to the government's motion to supplement the record on appeal. The third contention is equally meritless, because we have held that the search of the home was legal.

■ The evidence seized in the search of Kleinebreil's home included a key and a receipt for the warehouse. The affidavit for the warrant for the search of the warehouse included the information from the previous affidavit for the search of the house, supplemented by a description of the events that occurred during the search of the house, and the evidence seized there. Under *Leon*, such information constitutes more than sufficient indicia of probable cause to justify the officers' good-faith reliance on the warrant. Therefore, the district court did not err in refusing to suppress the evidence.

## B.

In issue on the assault of a federal officer charge, 18 U.S.C. § 111, was whether Kleinebreil believed that the persons who entered his home were law enforcement officers. Along that line, the jury was instructed that Kleinebreil

> would not be guilty of an assault if the evidence leaves you with a reasonable

doubt concerning whether [Kleinebreil] knew the victim to be a Federal officer and acted as he did because of a reasonable, good faith belief that [Kleinebreil] needed to defend himself against an assault by a private citizen.

Kleinebreil objected to the charge, because it did not include requested language on the right to use deadly force under Texas law. He acknowledges that the given instruction is consistent with the Fifth Circuit Pattern Jury Instructions; nevertheless, he maintains that the district court should have instructed the jury on Texas law governing his rights to use deadly force to defend himself, his common-law wife, and his property, in order to provide the jurors with a framework for determining whether the force used would have constituted an assault against a private citizen in Texas.[12]

■ Refusal to give requested instructions is reviewed for abuse of discretion. *E.g., United States v. Sellers*, 926 F.2d 410, 414 (5th Cir.1991). A district court may refuse "to give a requested instruction which incorrectly states the law, is without foundation in the evidence, or is stated elsewhere in the instructions." *United States v. Neal*, 951 F.2d 630, 633 (5th Cir. 1992). "The refusal to give a requested jury charge is reversible error only if the instruction was substantially correct, was not substantially covered in the charge delivered to the jury, and it concerned an important issue so that failure to give it seriously impaired defendant's ability to present a given defense." *Id.*

■ The district court correctly instructed the jury on Kleinebreil's defense to the assault charge. His requested, more specific instructions were covered by the

---

affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Id.* 462 U.S. at 238, 103 S.Ct. at 2330. A magistrate's probable cause determination is entitled to "great deference". *United States v. Marbury*, 732 F.2d 390, 395 (5th Cir.1984).

**12.** One of the requested instructions follows:

> You are instructed, that [Texas] law provides that a person is justified in using deadly force against another to protect his home and family, when and to the degree, he reasonably believes the deadly force is immediately necessary to prevent the other's imminent commission of arson, burglary, robbery, aggravated robbery or theft during the nighttime, or criminal mischief during the night[t]ime.

charge. The question, in part, is *whether he believed* that he "needed to defend himself against an assault by a private citizen", *not* when and how he could do so.[13] The district court did not err in refusing the requested instructions.

### C.

The procedure for sentencing on multiple counts of conviction is contained in Chapter 3, Part D of the Sentencing Guidelines:[14] (1) group the convictions into "Groups of Closely–Related Counts", by applying the rules of U.S.S.G. § 3D1.2; (2) determine the offense level applicable to each group; and (3) determine the combined offense level, by adding points prescribed by the table in § 3D1.4 (as explained in note 16, *infra*) to the offense level of the group with the highest total. U.S.S.G. § 3D1.1.

In the presentence report (PSR), the probation officer grouped the marijuana-related convictions (counts one and two); the assault conviction constituted a separate group. The recommended combined offense level was calculated as follows.

The base offense level for the marijuana group, based on 94 pounds of marijuana, is 20.[15] Added to that were three-level increases each for Kleinebreil's supervisory role, § 3B1.1(b), and for an official victim, § 3A1.2, for a group total of 26. The base offense level for the aggravated assault group (count three) is 15. U.S.S.G. § 2A2.2. Five levels were added for discharge of a firearm, § 2A2.2(b)(2); four, for the victim's serious bodily injury, § 2A2.2(b)(3)(B); and three each, for an official victim, § 3A1.2, and supervisory role, § 3B1.1(b), for a group total of 30.

The combined offense level was computed by taking the offense level applicable to the group with the highest offense level, 30 (the assault group), and increasing it by two levels, pursuant to the table in § 3D1.4, for a total of 32.[16] The probation officer did not apply an adjustment for acceptance of responsibility, stating that Kleinebreil had not admitted guilt or accepted responsibility for his conduct. A total offense level of 32, with a criminal history category of I, carries a sentencing range of 121–151 months of imprisonment. U.S.S.G., Sentencing Table. The probation officer found no basis for departure from the Guidelines.

Kleinebreil did not file written objections to the PSR until the day of the sentencing hearing, objecting only to the victim-related adjustment for the marijuana group and to the role-related adjustment for the assault group; he maintained that the adjusted offense level for the marijuana group should be only 23, and for the assault, only 27. (This, of course, would result in a lesser sentencing range.) And, at the hearing, he objected to the official victim-related increase for the marijuana group, and to denial of the reduction for acceptance of responsibility. The district court adopted the PSR recommendations.

On appeal, Kleinebreil contends that the district court misapplied the Guidelines in five respects: (1) imposition of consecutive sentences on counts one and two; (2) denial of a reduction for acceptance of responsibil-

---

**13.** Moreover, the requested instruction is not "substantially correct"; there is no authority for such application of Texas law to the federal offense created by 18 U.S.C. § 111. *Cf. United States v. Feola*, 420 U.S. 671, 684 n. 18, 95 S.Ct. 1255, 1264, n. 18, 43 L.Ed.2d 541 (1975); *United States v. Lopez*, 710 F.2d 1071, 1073 (5th Cir. 1983).

**14.** All citations to the Guidelines are to the 1989 Guidelines Manual, in effect when Kleinebreil was sentenced in June 1990. *See United States v. Ainsworth*, 932 F.2d 358, 362 (5th Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 346, 116 L.Ed.2d 286 (1991).

**15.** Although there was testimony that 104 pounds of marijuana were seized from the rent-

al car driven by Cook, the PSR used 94 pounds in calculating the sentence. In any event, the base offense level of 20 would not change if calculated on the basis of 104 pounds. U.S.S.G. § 2D1.1(c)(12).

**16.** The table specifies that two levels are to be added for two "units". The number of units was computed by counting as one unit the group with the highest offense level, and counting as one additional unit each group that is either equally serious or only from one to four levels less serious (the marijuana group level of 26 is 4 levels less than the assault group level of 30). U.S.S.G. § 3D1.4(a).

ity; (3) an increase for an official victim as to the marijuana group; (4) an increase for the assault group for his supervisory role in the offense; and (5) an increase for that group for an official victim. "In reviewing a challenge to a sentence under the Guidelines, we must accept the factual findings of the district court unless clearly erroneous, but we fully review its application of the Guidelines for errors of law." *United States v. Sellers*, 926 F.2d 410, 417 (5th Cir.1991). (Kleinebreil is not challenging any findings of fact.) As noted below, some of these grounds were not raised in the district court; but, because the sentence must be vacated on grounds that were, we address each of the issues for the guidance of the district court on remand, rather than limiting those not preserved to the more narrow, plain error review. *See United States v. Brunson*, 915 F.2d 942, 944 (5th Cir.1990).

### 1.

Kleinebreil asserts that 28 U.S.C. § 994($l$)(2) prohibits consecutive sentences for conspiracy to commit an offense and for an offense that was the sole object of that conspiracy. Because he did not so object in district court, we would normally review only for plain error.

■ The duties of the Sentencing Commission are listed in 28 U.S.C. § 994; the part Kleinebreil relies on states that the Sentencing Commission "shall insure that the guidelines ... reflect ... the general inappropriateness" of consecutive sentences under such circumstances. 28 U.S.C. § 994($l$)(2). The Guidelines carry this out by requiring that when a defendant is convicted of one count for conspiracy and another count for the substantive offense that was the sole object of the conspiracy, the counts will be grouped together. U.S.S.G. § 3D1.2, comment. (n.4). Moreover, the procedures for sentencing on multiple counts of conviction specify that sentences are to run concurrently, "except to the extent otherwise required by law." U.S.S.G. § 5G1.2(c). Imposition of consecutive sentences is authorized, however, in one limited situation:

> If the sentence imposed on the count carrying the highest statutory maximum is less than the total punishment, then the sentence imposed on one or more of the other counts shall run consecutively, but only to the extent necessary to produce a combined sentence equal to the total punishment. In all other respects sentences on all counts shall run concurrently, except to the extent otherwise required by law.

U.S.S.G. § 5G1.2(d).

Count three (assault) carries the highest statutory maximum, 120 months. 18 U.S.C. § 111. The sentence imposed on that count was 91 months, less than the total punishment of 121–151 months. The district court also sentenced Kleinebreil to 30 months imprisonment each on the two marijuana counts. Because the sentence imposed on count three was less than the total punishment, the district court ordered the sentences on the marijuana counts to run consecutively. This was "necessary to produce a combined sentence equal to the total punishment", § 5G1.2(d). But, on remand, recalculation of the group offense levels and the combined offense level may change the total punishment figure, resulting in § 5G1.2 again controlling whether the sentences should run consecutively or concurrently.

### 2.

■ Kleinebreil refused to accept responsibility for the assault, because state charges for attempted capital murder of state officers were pending against him for the same conduct. Although the district court found that he had accepted responsibility for the two marijuana convictions, it did not grant him a two-level reduction in his offense level under § 3E1.1. Kleinebreil contends that the failure to grant the reduction in the offense level for the marijuana group penalized him for exercising his Fifth Amendment privilege against self-incrimination, and that he should have received a reduction in the offense level for that group before the combined offense level based on both groups was computed. For this and his other challenges to the

offense level calculations, discussed *infra*, Kleinebreil contends that the increases caused a greater combined offense level, resulting in an increased sentencing range.[17]

The offense level may be reduced two levels for a defendant who "clearly demonstrates a recognition and affirmative acceptance of personal responsibility for his criminal conduct...." U.S.S.G. § 3E1.1(a).

> The sentencing judge is in a unique position to evaluate a defendant's acceptance of responsibility. For this reason, the determination of the sentencing judge is entitled to great deference on review and should not be disturbed unless it is without foundation.

U.S.S.G. § 3E1.1, comment. (n.5). And, "the sentencing court's factual determinations on this matter are entitled to even greater deference than that accorded under a clearly erroneous standard of review." *United States v. Mourning*, 914 F.2d 699, 705 (5th Cir.1990).

The plain wording of the Guidelines is contrary to Kleinebreil's proposed application of § 3E1.1. The Application Instructions in Chapter One, Part B, listing the steps to be followed in applying the Guidelines, provide that an adjustment for acceptance of responsibility, if appropriate, § 1B1.1(e), is to be applied *after* the offense levels for groups of multiple counts and the resulting combined offense level have been computed, § 1B1.1(d). *See* U.S.S.G. § 1B1.1(a)–(i). They do not permit an acceptance of responsibility adjustment

to be first applied to each separate group.[18] *See United States v. McDowell*, 888 F.2d 285, 293 (3d Cir.1989) ("adjustment for acceptance of responsibility ... should be made only after the counts are combined"; § 1B1.1(e) "does not contemplate calculating acceptance of responsibility for each offense").

■ Kleinebreil's Fifth Amendment contention is equally unavailing. This court rejected a similar argument in *United States v. Mourning*. Mourning pleaded guilty to money laundering, and accepted responsibility for that conduct, but refused to accept responsibility for related criminal conduct not charged in the count of conviction. He contended that the district court's refusal to grant him a § 3E1.1 reduction penalized him for maintaining his innocence on the uncharged criminal conduct. 914 F.2d at 705. We disagreed, holding that, "before a defendant is entitled to a reduction for acceptance of responsibility, he must first accept responsibility for *all* of his relevant criminal conduct." *Id.* (emphasis added). After considering the constraints of the Fifth Amendment, we concluded:

> [A]ffording a possibility of a more lenient sentence does not *compel* self-incrimination. To the extent the defendant wishes to avail himself of this provision, any "dilemma" he faces in assessing his criminal conduct is one of his own making. The government is permitted to re-

---

**17.** For example, if the two level acceptance of responsibility reduction had been applied to the marijuana group offense level (26), the adjusted offense level would have been 24; and, because this would have been more than four levels less serious than the assault group offense level (30), it would have resulted in a § 3D1.4 adjustment of only one-half a unit, with a final combined offense level of 31, instead of 32, and a concomitant sentencing range of 108–135, instead of 121–151, months. U.S.S.G. § 3D1.4 & Sentencing Table; *see* note 16, *supra*.

**18.** Other portions of the Guidelines also support our interpretation. The Introductory Commentary to Chapter Three, Part D (Multiple Counts), states that "[t]he single, 'combined' offense level that results from applying these rules is used, after adjustment pursuant to the guidelines in

subsequent parts [i.e., Part E—Acceptance of Responsibility], to determine the sentence." The commentary to § 3D1.1 (Procedure for Determining Offense Level on Multiple Counts) states: "This section outlines the procedure to be used for determining the combined offense level. After any adjustments from Chapter 3, Part E (Acceptance of Responsibility) ... are made, this combined offense level is used to determine the guideline sentence range." U.S.S.G. § 3D1.1, comment. (backg'd). *See also* § 3D1.3(a) (offense level applicable to grouped counts is "determined in accordance with Chapter Two and Parts A, B, and C of Chapter Three"); § 3D1.5, comment. ("The combined offense level is subject to adjustments from Chapter Three, Part E (Acceptance of Responsibility)....").

ward contrition. This is not the same as compelling self-incrimination.

*Id.* at 707 (emphasis in original) (citation omitted). *See also United States v. Alfaro,* 919 F.2d 962, 968 (5th Cir.1990).[19]

The Guidelines do not authorize a § 3E1.1 reduction unless the district court finds that the defendant has accepted responsibility for all of his criminal conduct. Because Kleinebreil did not accept responsibility for the assault, the district court did not err in refusing to grant the reduction.

### 3.

Kleinebreil maintains that, because his marijuana group convictions are victimless offenses, the district court erred in assessing an official victim increase in the offense level for that group, ultimately resulting in a higher combined offense level and greater sentencing range.

The three-level increase for an official victim applies only if "the offense of conviction was motivated by the fact that the victim was a law enforcement" officer. U.S.S.G. § 3A1.2, comment. (n.4). It "does not apply when the only victim is an organization, agency, or the government." *Id.*, comment. (n.1). The government contends that the adjustment was proper because the "offense of conviction" (the marijuana counts) includes the assault during the marijuana-related search (including the resulting discovery of marijuana), which would not have occurred if Kleinebreil had not been involved in drug trafficking.

The government asserts correctly that adjustments for the victim's status are to be determined on the basis of all relevant conduct, as defined in U.S.S.G. § 1B1.3. But, the Guidelines would allow an increase in the offense level for the marijuana group based on the official status of the assault victims *only* if the assault and marijuana counts comprised a single group.

As discussed in part, the Guidelines require that "[a]ll counts involving substantially the same harm shall be grouped together into a single Group." U.S.S.G. § 3D1.2. One of the circumstances in which counts are considered to involve substantially the same harm is "[w]hen one of the counts embodies conduct that is treated as a specific offense characteristic in, or other adjustment to, the guideline applicable to another of the counts." U.S.S.G. § 3D1.2(c). This provision is designed to prevent double-counting. U.S.S.G. § 3D1.2, comment. (n.5). Moreover, grouping under § 3D1.2(c) is appropriate "only if the offenses are closely related". *Id.* Because the marijuana offenses were not "closely related" to the assault, the district court placed the assault count in a separate group. As discussed in part II.C.5., *infra,* the official victim-related increase in the offense level for the assault group was proper. However, because the assault count was not grouped with the marijuana counts, the district court erred in similarly increasing the offense level for the marijuana convictions.

19. The Tenth Circuit reached the same conclusion in *United States v. Ross,* 920 F.2d 1530 (10th Cir.1990). Ross claimed that he had accepted responsibility for a drug-trafficking charge, but was denied a reduction because he did not also accept responsibility for a firearms charge. *Id.* at 1537. He contended that the sentencing scheme required him to plead guilty to all charges against him in order to obtain the benefit of the reduction, in violation of his Fifth Amendment right against self-incrimination and his Sixth Amendment right to a jury trial. *Id.* The Tenth Circuit disagreed, stating:

[T]he denial of a downward adjustment under § 3E1.1 does not constitute a penalty or an enhancement of sentence. There is a difference between increasing the severity of a sentence for failure to demonstrate remorse and refusing to grant a reduction from the prescribed base offense level."

*Id.* (citation omitted). *Accord United States v. Ignancio Munio,* 909 F.2d 436, 439–40 n. 4 (11th Cir.1990), *cert. denied,* — U.S. —, 111 S.Ct. 1393, 113 L.Ed.2d 449 (1991); *United States v. Gordon,* 895 F.2d 932, 936–37 (4th Cir.), *cert. denied,* — U.S. —, 111 S.Ct. 131, 112 L.Ed.2d 98 (1990); *United States v. Henry,* 883 F.2d 1010, 1011 (11th Cir.1989). *Contra United States v. Frierson,* 945 F.2d 650, 658 (3d Cir.1991), *cert. denied,* — U.S. —, 112 S.Ct. 1515, 117 L.Ed.2d 651 (1992); *United States v. Piper,* 918 F.2d 839, 840–41 (9th Cir.1990); *United States v. Oliveras,* 905 F.2d 623, 626 (2d Cir.1990); *United States v. Perez–Franco,* 873 F.2d 455, 463 (1st Cir.1989).

#### 4.

■ Kleinebreil contends that, because he was the sole participant in the assault, the district court improperly increased the offense level for the assault group based upon his supervisory role in the marijuana offenses, resulting, again, in a higher combined offense level.[20] A three-level increase in the offense level is permitted "[i]f the defendant was a manager or supervisor (but not an organizer or leader) and the criminal activity involved five or more participants or was otherwise extensive." U.S.S.G. § 3B1.1(b). Such an adjustment "is anchored to the transaction leading to the conviction." *United States v. Barbontin*, 907 F.2d 1494, 1498 (5th Cir.1990). The "transaction leading to the conviction", however, is broader than the offense charged, and includes the "contours of the underlying scheme itself." *United States v. Mir*, 919 F.2d 940, 945 (5th Cir.1990). "All participation firmly based in that underlying transaction is ripe for consideration in adjudging a leadership role under section 3B1.1." *Id.*

As discussed in part II.C.3., *supra*, the Guidelines do not permit characteristics of one count to be used to adjust the offense level for another count unless those counts are in the same group. The district court properly assessed a three-level increase in the marijuana group offense level for Kleinebreil's supervisory role. But, because the assault and marijuana convictions are in separate groups, Kleinebreil's role in the marijuana transactions cannot be used to similarly increase the assault group offense level.

#### 5.

■ Finally, Kleinebreil maintains that, because the victim's official status was an essential element of the offense (assault) charged in count three, the district court erred in assessing an official victim-related increase in the assault group offense level. Kleinebreil did not raise this issue in the district court. Therefore, again, it is one we would normally review only for plain error.

Kleinebreil's contention fails to distinguish between elements of an offense and specific offense characteristics under the Guidelines. Because there is not a separate guideline for each federal offense, the Guidelines state that the court is to use the offense guideline section "most applicable to the offense of conviction (*i.e.*, the offense conduct charged in the count of the indictment or information of which the defendant was convicted)". U.S.S.G. § 1B1.2(a).

The Statutory Index in Appendix A lists two offense guideline sections for 18 U.S.C. § 111: § 2A2.2 ("Aggravated Assault") and § 2A2.4 ("Obstructing or Impeding Officers"). The base offense level for § 2A2.4 specifically incorporates the official status of the victim. However, § 2A2.4 contains the following cross-reference: "If the defendant is convicted under 18 U.S.C. § 111 and the conduct constituted aggravated assault, apply § 2A2.2 (Aggravated Assault)." U.S.S.G. § 2A2.4(c)(1). The Application Notes to § 2A2.4 state that the official victim assessment should not be applied "*unless* subsection (c) requires the offense level to be determined under § 2A2.2." U.S.S.G. § 2A2.4, comment. (n.1) (emphasis added).

Kleinebreil was convicted under 18 U.S.C. § 111, and his conduct constituted aggravated assault. Accordingly, pursuant to the cross-reference in § 2A2.4, § 2A2.2 (Aggravated Assault) applies. Unlike the base offense level for § 2A2.4, the base offense level for § 2A2.2 does *not* reflect the fact that the victim was a government official. *See* U.S.S.G. § 3A1.2, comment. (n.3) (the *only* offense guideline in Chapter Two, Part A, that specifically incorporates the official status of the victim is § 2A2.4 ("Obstructing or Impeding Officers")). Therefore, the district court properly increased the assault group offense level for an official victim.

#### 6.

Neither party has questioned the four-level increase in the assault group offense

---

**20.** This objection is included in Kleinebreil's written objections belatedly filed on the day of the sentencing hearing and attached to the PSR.

level, based upon serious bodily injury, § 2A2.2(b)(3)(B). Nevertheless, because this case is being remanded for resentencing, it is appropriate to note a case recently decided by another panel of this court, *United States v. Moore*, 958 F.2d 646 (5th Cir.1992). When Houston police officers and DEA and Customs Agents attempted to execute a search warrant, a Houston officer was shot by Moore. Moore was convicted of aggravated assault under 18 U.S.C. § 111; and his base offense level was increased by four levels, because the victim sustained serious bodily injury. Moore argued that the "victim" contemplated by § 2A2.2(b)(3) is the "victim" contemplated by 18 U.S.C. § 111: a federal agent. He maintained that the adjustment was inapplicable, because no federal agents were injured. The panel agreed, holding that "[t]here is no justification for adding four points when the only person injured was ... the city police officer." *Id.* at 651.

Count three charged Kleinebreil with assault of the federal officers, in violation of 18 U.S.C. § 111(a)(1) and (b). The PSR, adopted by the district court, stated that the four-level increase was applicable because "[t]wo federal officers were shot by the defendant and one sustained serious bodily injury." According to the record, however, the injured officers were Clayton County Deputy Sheriff Lewis and Austin Police Officer Medlicott.[21]

Because this issue was neither raised nor briefed in this court or in the district court, we do not comment on the applicability *vel non* of *Moore* to this case, but instead merely cite it for consideration on remand.

### III.

The judgment of conviction is AFFIRMED. The sentences are VACATED, and the case is REMANDED for resentencing.

---

**21.** Lewis sustained permanent damage to his right hand; Medlicott was shot in the chest, but, as noted, escaped serious injury because he was wearing a bullet-proof vest.