**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                              No. 97-4369

AKINOLA OBAYANJU,
Defendant-Appellant.

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
Herbert N. Maletz, Senior Judge, sitting by designation.
(CR-96-453)

Submitted: September 29, 1998

Decided: October 23, 1998

Before MURNAGHAN, HAMILTON, and MICHAEL,
Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

Phillip M. Sutley, Baltimore, Maryland, for Appellant. Lynne A. Bat-
taglia, United States Attorney, Andrew C. White, Assistant United
States Attorney, Baltimore, Maryland, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See
Local Rule 36(c).

**OPINION**

PER CURIAM:

Akinola Obayanju was convicted by a jury of three counts of assaulting a federal officer in violation of 18 U.S.C.A. § 111 (West Supp. 1998). He was sentenced to a term of eighty-four months imprisonment and appeals his sentence. Obayanju contends that the district court erred in applying a four-level enhancement for use of an automobile as a dangerous weapon, see USSG§ 2A2.2(b)(2)(B),**1** erred in applying a three-level adjustment for assaulting a law enforcement officer in a manner which created a substantial risk of serious bodily injury, see USSG § 3A1.2(b), and clearly erred in finding that he obstructed justice by giving perjured testimony at trial, see USSG § 3C1.1. We affirm.

At Obayanju's trial, the government produced evidence that Obayanju was under surveillance by four agents from the Baltimore Fraud Task Force in July 1996 when he picked up mail, including a fraudulently obtained credit card, at a house where he did not live. As Obayanju returned to his car, which still had the engine running, Secret Service agents Gregory Tate and Vincent O'Neill pulled their unmarked car in front of Obayanju's car. Postal inspector Francis Brown and Baltimore Police Detective David Wimmer drove another unmarked police car behind Obayanju's car. Brown had activated the flashing lights and red and blue strobe lights on the front of the police car. Tate and O'Neill approached Obayanju with badges displayed and weapons drawn. Tate was wearing a vest clearly marked "Police" and "Secret Service" on the front. Both agents yelled, "Police! . . . Freeze!" several times. Ignoring their commands, Obayanju got into his car. While the door was still open, Tate grabbed Obayanju's shirt. Still ignoring the agents' commands, Obayanju revved the engine, put the car in reverse, and rammed the car behind him. Obayanju then drove forward at high speed straight at O'Neill, who lunged out of the way. The agents pursued Obayanju. After a high-speed chase of over a mile and a half through residential streets and alleys, during which Tate and O'Neill activated the flashing lights and the siren on their vehicle, Obayanju abandoned his car in an alley and fled on foot.

_____

**1** **U.S. Sentencing Guidelines Manual** (1995).

2

When Tate caught up with him, Obayanju turned and tried to tackle Tate. They struggled until O'Neill arrived and helped to subdue and handcuff Obayanju. A search of Obayanju's car disclosed evidence of credit card fraud.

Obayanju testified at trial that he did not realize the agents were law enforcement officers. He said he had been robbed once before and thought he was being robbed again when he saw the agents' guns. He testified that he did not hear the agents identify themselves as police and did not see the flashing lights or hear the sirens on their vehicles. He said that, when Tate was chasing him in the alley, he heard Tate say "police," and at that point, he got down on his knees and put his hands behind his head. He also testified that he was picking up mail for a friend, and that neither the car he was driving nor the twenty credit reports found in the car belonged to him. The jury convicted Obayanju of assaulting Tate, O'Neill, and Brown.

At sentencing, over Obayanju's objections, the district court found that Obayanju's use of a dangerous weapon, his car, to assault Brown and O'Neill necessitated a four-level enhancement under USSG § 2A2.2(b)(2)(B).[2] The court decided that an adjustment for perjury was warranted under USSG § 3C1.1 because Obayanju lied about material matters during his trial testimony when he testified that he had an innocent reason for picking up mail, denied any connection with credit card fraud, and testified that he did not see the flashing lights on the police cars or hear the sirens. The court also determined that making an official victim adjustment under USSG§ 3A1.2 did not result in double counting even though the officers' official status was an essential element of the offense of conviction.

On appeal, Obayanju first argues that the dangerous weapon enhancement constituted impermissible double counting because his

_____

[2] The district court determined that the assault on Tate in the alley was a simple assault, while the assaults on O'Neill and Brown were aggravated assaults because Obayanju had used a dangerous weapon--his car. The three counts were placed in separate groups for sentence calculation because each involved a different victim. See USSG § 3D1.2. The aggravated assault counts produced the higher combined adjusted offense level (26) which governed the sentence.

3

use of the car as a dangerous weapon increased his offense level twice: first, by triggering the application of the aggravated assault guideline and, second, as the basis for the four-level enhancement for use of a dangerous weapon. Obayanju acknowledges that we rejected the same argument in United States v. Williams , 954 F.2d 204, 205-08 (4th Cir. 1992), but urges reconsideration of our holding in light of United States v. Hudson, 972 F.2d 504, 506-07 (2d Cir. 1992) (disagreeing with Williams). We decline to reconsider Williams and we note that all other circuits which have addressed the issue since Hudson have found its reasoning flawed and agreed with Williams. See United States v. Duran, 127 F.3d 911, 917-18 (10th Cir. 1997), cert. denied, 118 S. Ct. 1389 (1998); United States v. Johnstone, 107 F.3d 200, 211 (3d Cir. 1997) (listing cases). Consequently, we find no error on the part of the district court.

Obayanju makes a similar argument with respect to the three-level adjustment for assaulting a person who he knew or had reason to know was an "official victim"--here, a law enforcement officer. He claims that application of the adjustment under USSG§ 3A1.2 resulted in double counting because his offense of conviction, assaulting a federal officer or employee, see 18 U.S.C.A. § 111, necessarily involved official victims. This argument fails because the applicable guideline, USSG § 2A2.2, covers any aggravated assault and does not reflect the status of official victims. See United States v. Kleinbreil, 966 F.2d 945, 955 (5th Cir. 1992). Obayanju's argument "fails to distinguish between elements of an offense and specific offense characteristics under the Guidelines." Id. That the guidelines clearly envision use of the official victim adjustment in a case such as this is evidenced by Application Note 1 to USSG § 2A2.4 (Obstructing or Impeding Officers), which directs that an adjustment for official victim should not be applied unless the offense is an aggravated assault requiring that the offense level be determined under the cross-reference to USSG § 2A2.2. See United States v. Valdez-Torres, 108 F.3d 385, 390 (D.C. Cir. 1997).

Finally, Obayanju contests the district court's determination that he committed perjury during his trial testimony because a number of his statements which the court found to be lies were not material to the issue before the jury. The district court found that Obayanju:

4

> lied specifically in the Court's view about what he was doing at the house picking up mail. He lied about the ownership of the car. He lied about the credit report. He lied in connection with that chase, which is an integral part of the case. He says he didn't hear sirens or lights. I think that was in the Court's view a lie.

An adjustment for obstruction of justice based on perjury may be made if the district court finds that the defendant gave "false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake or faulty memory." United States v. Dunnigan, 507 U.S. 87, 94 (1993). Here, because Obayanju's defense at trial was that he did not know the persons confronting him were law enforcement officers, the issue before the jury was whether Obayanju in fact knew that he was assaulting law enforcement officers, not robbers. The district court found that Obayanju willfully gave false testimony about whether he knew he was dealing with law enforcement officers when he "lied in connection with that chase" and in saying he was unaware of the sirens and lights. This finding was adequate under Dunnigan  and was not clearly erroneous. Therefore, even though the district court also found that Obayanju lied about other matters which arguably were not material to the issue for which he was being tried, we find that the adjustment was not error.

The sentence is accordingly affirmed. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED

5