**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**William Allen GINN, Defendant–
Appellant.**

No. 95–50326.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted June 7, 1996.

Decided June 26, 1996.

---

Gretchen C. Von Helms and Michael Petrik, Jr., Federal Defenders of San Diego, Inc., San Diego, California, for appellant.

Alberto A. Arevalo, Assistant United States Attorney, San Diego, California, for appellee.

Before WIGGINS, THOMPSON and TROTT, Circuit Judges.

DAVID R. THOMPSON, Circuit Judge:

William Allen Ginn appeals his bench trial conviction and sentence for the robbery of the Union Bank. He also appeals his sentence for the robbery of the Home Savings Bank. Ginn pleaded guilty to robbing the Home Savings Bank.

With regard to the Union Bank robbery, Ginn argues the evidence is insufficient to support his conviction and the district court erred by excluding expert testimony on eyewitness identification and by excluding evidence of his asserted alibi.

With regard to his sentence, Ginn argues the district court erred when it sentenced him for both bank robberies without giving him any adjustment for acceptance of responsibility. He contends he is entitled to an adjustment for acceptance of responsibility because he pleaded guilty to the Home Savings Bank robbery.

We have jurisdiction under 18 U.S.C. § 3742 and 28 U.S.C. § 1291, and we affirm.

## FACTS

On October 3, 1994, Ronald J. Skillman, the manager of a branch of Union Bank, spoke with a man in the lobby of the bank. At trial, Skillman identified that man as Ginn and testified that Ginn had inquired about transferring an account to Union Bank from Bank of America.

About thirty minutes later, Skillman again saw the man standing in the teller line. At that time, Skillman was standing next to Kim Giordano, a teller. Skillman testified that the man approached Giordano at the counter and lifted his shirt to reveal an automatic weapon inside his waistband on his left side. According to Skillman, the man said he wanted all the cash in the drawer in large bills. When Giordano did not react quickly enough, Skillman began giving the man the money from the drawer. At trial, Skillman and Giordano identified Ginn as the robber. Giordano had previously identified Ginn as the robber in a pretrial photographic lineup.

After taking the money, the robber left the bank. Ilyana Wroton was sitting in her car in the bank parking lot at that time. She saw a man leaving the bank at a jog and gripping his left side. At trial and in a pretrial photographic lineup, Wroton identified Ginn as that person.

On October 13, 1994, Ginn was arrested as he was driving away from the Home Savings Bank, which he had just robbed. A superseding indictment charged Ginn with two counts of armed bank robbery for the robberies of the Union Bank and the Home Savings Bank, in violation of 18 U.S.C. § 2113(a) and (d), and with a separate count for using a firearm during the Union Bank robbery, in violation of 18 U.S.C. § 924(c)(1). Ginn pleaded guilty to armed robbery of the Home Savings Bank. After a bench trial, the district court found him guilty of robbing the Union Bank, but not guilty of using a firearm in that robbery. For both robberies, the district court sentenced Ginn to an aggregate of seventy-eight months incarceration, five years of supervised release, and ordered him to pay restitution to the Union Bank for the money taken in that robbery.[1] This appeal followed.

## DISCUSSION

A. Sufficiency of the Evidence

■ Ginn first argues the evidence was insufficient to support his conviction for the Union Bank robbery, because the eyewitnesses' descriptions differed and the prosecution, he contends, failed to present corroborating evidence. We conclude the evidence was sufficient.

1. All of the money taken in the Home Savings Bank robbery was recovered.

Sufficient evidence supports Ginn's conviction if "viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979) (emphasis in original). In reviewing the evidence, we "must respect the exclusive province of the [trier of fact] to determine the credibility of witnesses, resolve evidentiary conflicts, and draw reasonable inferences from proven facts...." *United States v. Ramos,* 558 F.2d 545, 546 (9th Cir.1977).

The prosecution presented eyewitness identifications of Ginn as the robber. At trial, Skillman and Giordano identified him as the robber, and Wroton identified him as the person who was jogging from the bank on the afternoon of the robbery. Giordano and Wroton also identified Ginn in pretrial photographic lineups.

In addition to the eyewitness identifications, the government presented the following corroborating evidence. Giordano testified the robber wore a baseball cap with a "ying-yang" symbol on the cap. She drew a picture of that symbol. Ginn's roommate, Malle Karge, testified Ginn wore a baseball cap with a symbol on it and, in response to the prosecutor's request, drew a picture of the symbol on the cap. The symbol Karge drew was substantially the same as the symbol drawn by Giordano.

Karge also testified that Ginn's wife paid Ginn's rent for August and September, although at least in September she was not living there. On October 5, 1994, two days after the Union Bank robbery, Ginn paid the rent for his apartment in cash.

The prosecution also presented evidence that, when Ginn first spoke with Skillman in the Union Bank, he inquired how to transfer his bank account from Bank of America. Two accounts at Bank of America were at that time in the name of "William Allen Ginn." Finally, Wroton testified that the person she saw jogging from the Union Bank on the afternoon of the robbery was wearing black shoes, which looked like boots. When Ginn was arrested after the Home Savings Bank robbery, he was wearing boots.

The totality of this evidence is more than sufficient to support Ginn's conviction of the Union Bank robbery. In contending it is not, Ginn points to discrepancies in the eyewitnesses' descriptions of the robber. He points out that (1) Skillman said the robber displayed a gun, but Giordano stated she did not see a gun; (2) Skillman testified the robber's cap was two colors, but Giordano testified the cap was only a single color; (3) Skillman testified the robber wore a denim shirt, but Wroton testified the robber wore a green jacket; (4) Wroton did not notice whether the cap had a symbol on it; and (5) Skillman testified the robber was wearing glasses, but Wroton testified the robber was not wearing glasses.

The evidence is not rendered insufficient simply because there are discrepancies in the eyewitnesses' descriptions of the robber. Ginn was able to cross-examine the eyewitnesses and to argue to the trier of fact that the discrepancies in their identifications made those identifications unreliable. The trier of fact then had the responsibility of determining whether the identifications were credible. *United States v. Alexander,* 48 F.3d 1477, 1490–91 (9th Cir.), *cert. denied,* —— U.S. ——, 116 S.Ct. 210, 133 L.Ed.2d 142 (1995). The discrepancies raised by Ginn are not so significant that we, as an appellate court, can say the identifications were incredible.

There is no merit to Ginn's argument that the prosecution's alleged failure to present evidence which corroborated the eyewitness identifications renders the evidence insufficient. The prosecution is not required to present evidence corroborating the eyewitness identifications. "[T]he testimony of one witness, if solidly believed, is sufficient to prove the identity of a perpetrator of crime." *United States v. Smith,* 563 F.2d 1361, 1363 (9th Cir.1977), *cert. denied,* 434 U.S. 1021, 98 S.Ct. 747, 54 L.Ed.2d 769 (1978). In any event, as we stated above, the prosecution did present corroborating evidence.

We conclude the evidence was sufficient to support Ginn's conviction for the Union Bank robbery.

## B. Exclusion of Expert Testimony

■ Ginn next argues the district court erred by excluding expert testimony on the reliability of eyewitness identifications. We disagree.

■ To be admissible under Federal Rule of Evidence 702,[2] expert testimony must be scientifically valid and must assist the trier of fact. *Daubert v. Merrell Dow Pharmaceuticals,* 509 U.S. 579, 591–93, 113 S.Ct. 2786, 2796, 125 L.Ed.2d 469 (1993).

The district court found the expert testimony would not assist it in determining Ginn's guilt or innocence. The district court, as the trier of fact, was in the best position to make this determination. *See Beech Aircraft Corp. v. United States,* 51 F.3d 834, 842 (9th Cir.1995). The district court could reasonably find that the most efficient method of attacking the credibility of the eyewitness testimony would be through cross-examination of the eyewitnesses. *Cf. United States v. Rincon,* 28 F.3d 921, 926 n. 6 (9th Cir.), cert. denied, —— U.S. ——, 115 S.Ct. 605, 130 L.Ed.2d 516 (1994). We conclude the district court did not err by excluding the proffered expert's testimony.

## C. Alibi Defense

Ginn contends the district court erred by excluding his alibi evidence. This contention lacks merit. The evidence Ginn argues he was precluded from presenting was in fact presented during his trial.

Sokly Hor, Ginn's wife, testified that at the time of the Union Bank robbery (approximately 3:30 in the afternoon), Ginn was visiting her and their son at a park near her mother's house. She testified Ginn arrived at noon and left the park at 3:00 or 3:30 p.m. She then dropped off their son with her sister at her mother's house and she and Ginn went to eat at Burger King. She testified they left Burger King at 4:00 or 4:30 p.m. In addition, Hor's sister, Soklorn Hor, testified that Ginn visited his wife and child on October 3rd. She testified that Sokly and Ginn left their son with her on that date at about 3:30 p.m.

It is clear from the record that the district court did not exclude Ginn's alibi evidence.

## D. Acceptance of Responsibility

■ Ginn's final argument is that the district court erred by refusing to grant him any downward adjustment of his sentence for acceptance of responsibility. He argues he accepted responsibility for the robbery of the Home Savings Bank and, therefore, he is entitled to a three-point downward adjustment under Sentencing Guideline Section 3E1.1.

The district court refused to grant Ginn any downward adjustment because Ginn did not accept responsibility for both bank robberies. According to the district court's interpretation of the Sentencing Guidelines, this made Ginn ineligible for any downward adjustment even though he pleaded guilty to the Home Savings Bank robbery.

■ We review de novo the district court's interpretation of the Sentencing Guidelines. *United States v. Eaton,* 934 F.2d 1077, 1078 (9th Cir.1991); *see also United States v. Brownstein,* 79 F.3d 121, 122 (9th Cir.1996).

■ The issue before us is whether a defendant must accept responsibility for all crimes of which he is convicted to obtain an adjustment for acceptance of responsibility under section 3E1.1.[3] We agree with the Third and the Fifth Circuits that a defendant is not entitled to an adjustment when he does not accept responsibility for all of the counts of which he is convicted. *United States v.*

**2.** Rule 702 provides:
> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.
> Fed.R.Evid. 702.

**3.** Section 3E1.1 provides:

> (a) If the defendant clearly demonstrates acceptance of responsibility for his offense, decrease the offense level by **2** levels.
> (b) If the defendant qualifies for a decrease under subsection (a), the offense level determined prior to the operation of subsection (a) is level **16** or greater, and the defendant has assisted authorities in the investigation or prosecution of his own misconduct by taking one or more of the following steps:

*McDowell,* 888 F.2d 285, 293 (3d Cir.1989); *United States v. Kleinebreil,* 966 F.2d 945, 951–53 (5th Cir.1992).

In *McDowell* and *Kleinebreil,* the courts reached this conclusion based on the methodology set forth in the Sentencing Guidelines for determining the base offense level for multiple counts of conviction. *McDowell,* 888 F.2d at 293; *Kleinebreil,* 966 F.2d at 951. "The intent of the Sentencing Commission is that the Guidelines be applied like a formula; a court or presentence investigator should go down each guideline in order, making the necessary calculations." *McDowell,* 888 F.2d at 293.

Under section 1B1.1, the district court first must determine the base offense level for each count of conviction. Then, the court must determine the combined offense level of such counts under Part D of Chapter Three. Only after this combined offense level is computed is an adjustment made for acceptance of responsibility. *Eaton,* 934 F.2d at 1080. Because an adjustment for acceptance of responsibility is made only after the combined offense level is computed, the Sentencing Guidelines do not "contemplate calculating acceptance of responsibility for each offense." *McDowell,* 888 F.2d at 293.

The application notes to section 3E1.1 support this conclusion. Application note 1(a) provides that, in determining whether a defendant is entitled to an adjustment for acceptance of responsibility, "appropriate considerations include ... (a) truthfully admitting the conduct comprising the offense(s) of conviction...." U.S.S.G. § 3E1.1, comment. (n.1(a)). Because the application note uses the plural form of "offense[s]," the note implies that a defendant must accept responsibility for all crimes of which he or she is convicted before the defendant is eligible for an adjustment under section 3E1.1.

In the present case, the base offense level for robbery of the Union Bank is 25. The combined offense level for the two robbery counts is determined under section 3D1.4. Under this section, two points are added for the Home Savings Bank robbery. Therefore, the combined offense level for both robberies is 27. Only at this point, would an adjustment be made for acceptance of responsibility. If the district court granted an adjustment for acceptance of responsibility, Ginn would receive a benefit on his offense level for both robberies even though he accepted responsibility for only one robbery. We conclude, consistent with the decisions of the Third Circuit in *McDowell,* 888 F.2d at 293, and the Fifth Circuit in *Kleinebreil,* 966 F.2d at 951–53, that permitting an adjustment for acceptance of responsibility in this circumstance would be contrary to the intent of the Sentencing Guidelines.

AFFIRMED.

---

(1) timely providing complete information to the government concerning his own involvement in the offense; or
(2) timely notifying authorities of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the court to allocate its resources efficiently,
decrease the offense level by **1** additional level.

