**UNITED STATES of America, Plaintiff—Appellee,**

v.

**Aquileo MELCHOR–ZARAGOZA, Defendant—Appellant.**

**United States of America, Plaintiff—Appellee,**

v.

**Ignacio Garcia–Rebollar, Defendant—Appellant.**

Nos. 02–10314, 02–10638.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 3, 2003.

Decided Dec. 9, 2003.

Lisa Jennis Settel, Esq., USPX–Office of the U.S. Attorney, Phoenix, AZ, for Plaintiff–Appellee.

Nancy L. Hinchcliffe, Esq., Phoenix, AZ, for Defendant–Appellant, Aquileo Melchor–Zaragoza.

Michael S. Reeves, Esq., Phoenix, AZ, for Defendant–Appellant, Ignacio Garcia–Rebollar.

Before: THOMPSON, TROTT, and CALLAHAN, Circuit Judges.

## MEMORANDUM *

Aquileo Melchor–Zaragoza ("Melchor") challenges his conviction and sentence. Melchor contends that the district court (1) violated *Batson* by permitting the prosecutor to exercise a peremptory challenge on the basis of race; (2) denied him a fair trial by admitting prejudicial prior bad acts into evidence; (3) gave the jury improper and misleading *Pinkerton* instructions; (4) erroneously applied a two-level vulnerable victim enhancement under U.S.S.G. § 3A1.1(b)(1); and (5) refused to grant him a two-level downward departure for acceptance of responsibility under U.S.S.G. § 3E1.1.[1]

Co-defendant Ignacio Garcia–Rebollar ("Garcia") challenges his sentence, arguing that the district court erred by refusing to depart downward to conform his sentence to those of two of his co-conspirators.

## A. Batson *Challenge*

■ Melchor contends the prosecution exercised a peremptory challenge to strike potential juror Guillermo Zepeda because he is Hispanic.

*Batson v. Kentucky,* 476 U.S. 79, 96–98, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), outlines a three-step process for evaluating claims that a prosecutor has used peremptory challenges in a manner violating the Equal Protection Clause. First, the defendant must make a prima facie showing that the prosecutor has exercised peremptory challenges on the basis of race. Second, if the requisite showing has been made, the burden shifts to the prosecutor to articulate a race-neutral explanation for striking the jurors in question. Third, the court must determine whether the defen-

1. In an opinion filed concurrently with this memorandum disposition, we affirm the district court's division of the 23 victims of the hostage-taking conspiracy into 23 separate count groups.

dant has carried his burden of proving purposeful discrimination. *Hernandez v. New York,* 500 U.S. 352, 358, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991).

Here, the prosecutor explained that she struck Zepeda because "it's my policy to pick people who listen and understand what is asked without it being repeated because that's not usually—they don't usually have that opportunity during the trial." Because the prosecutor offered a race-neutral explanation for striking Zepeda, the issue of whether Melchor made a prima facie showing is moot. *Hernandez,* 500 U.S. at 359.

We review for clear error the district court's ultimate finding that the prosecutor did not purposefully discriminate. *Stubbs v. Gomez,* 189 F.3d 1099, 1105 (9th Cir. 1999). We accord great deference to a trial court's findings on the issue of discriminatory intent. *Hernandez,* 500 U.S. at 365.

We conclude that the district court did not err in finding there was no purposeful discrimination. The record reflects that the prosecutor's proffered reason for striking Zepeda was her real reason for doing so. Zepeda had misunderstood the court's question regarding whether he or his family had been victims of crime and had to ask the court to repeat the question. When explaining to the court why she struck Zepeda, the prosecutor correctly noted that the juror questioned after Zepeda also failed to understand the question but was challenged for cause.

## B.  *Prior Bad Acts*

■ Melchor argues that the district court denied him a fair trial by admitting into evidence testimony by one of the hostages that he overheard either Melchor or Garcia talk about having previously killed a Panamanian and shot a security guard. We disagree.

The evidence was not admitted for a purpose prohibited by Federal Rule of Evidence 404(b)—i.e., to "prove the character of a person in order to action in conformity therewith." Rather, as explained by the district court, the evidence was admitted for the purpose of showing intimidation of the hostages.

Although the district court did not explicitly determine whether the probative value of the evidence was substantially outweighed by the danger of unfair prejudice, we assume that the court performed the necessary balancing because Melchor's attorney referred to Federal Rule of Evidence 403 in both his motion in limine and at sidebar. *See United States v. Ramirez–Jiminez,* 967 F.2d 1321, 1326 (9th Cir. 1992) (explaining that while the trial court failed to make an explicit finding under Rule 403, the court implicitly made the necessary finding because the government's trial memorandum reminded the judge of the necessity of weighing probative value and prejudice).

We need not determine whether the court properly balanced the probative value of the evidence against the risk of unfair prejudice, because even if the evidence was erroneously admitted, the error was harmless.

"[H]armless error analysis applies to the improper admission of evidence, and reversal is proper only if the government cannot show that the error was more probably than not harmless." *United States v. Beckman,* 298 F.3d 788, 793 (9th Cir.2002). To establish that the prejudice resulting from the error was more probably than not harmless, the government must show a "fair assurance" that the verdict was not "substantially swayed by the error." *United States v. Bauer,* 132 F.3d 504, 510 (9th Cir.1997).

The admission of the disputed evidence was more probably than not harmless,

even in the absence of a limiting instruction, because there was overwhelming evidence of Melchor's guilt. At trial, the testimony of Melchor's co-conspirators and victims firmly established his participation in the hostage taking scheme, including the use of firearms.

## C. Jury Instructions

■ Melchor contends that Jury Instructions 25, 26, and 27 were misleading and inadequate. Melchor's contention is without merit.

First, Melchor points to the court's use of the word "offenses" instead of "offense" during the oral charge. However, the jury had the correct written instructions before them during deliberations. Although written instructions do not necessarily repair an error in oral instructions (*see United States v. Ancheta*, 38 F.3d 1114, 1117 (9th Cir.1994)), here, the error was slight, and we have no reason to believe that any juror was confused by the minor difference in wording between the oral and written instructions.

■ Second, Melchor objects to the court's repetition of the *Pinkerton* charges' introductory language that explains what a conspiracy is and when a member of a conspiracy is responsible for the actions of co-conspirators. Although the repetition of this language was not necessary, it was not misleading or confusing.[2]

Finally, Melchor argues that the district court erred by failing to define the word "offense" as used in the fifth element of the *Pinkerton* charges. Melchor argues that the jury could have interpreted "offense" to mean an over act as opposed to the crime charged in the indictment.

Melchor's argument is unpersuasive. The *Pinkerton* charges track the language of Ninth Circuit Model Criminal Jury Instruction 8.20 and *United States v. Alvarez–Valenzuela*, 231 F.3d 1198, 1202–03 (9th Cir.2000). Moreover, the fourth element makes it clear that the word "offense," as used in the instructions, refers to the crime charged in the indictment.

## D. Vulnerable Victim Enhancement

■ Melchor challenges the district court's application of a two-level vulnerable victim enhancement under U.S.S.G. § 3A1.1(b)(1). He argues that the adjustment was improper because (1) it amounted to double-counting and (2) the enhancement should not apply to illegal aliens.

Both of Melchor's arguments are foreclosed by our decision in *United States v. Sierra–Velasquez*, 310 F.3d 1217 (9th Cir. 2002). In *Sierra–Velasquez*, we upheld the district court's application of the two-level vulnerable victim enhancement in sentencing the defendants who were convicted of hostage taking and conspiracy. We rejected the defendants' double-counting argument and explained that illegal aliens are more vulnerable than other categories of persons who may be held hostage for ransom.

## E. Acceptance of Responsibility

■ The district court did not err in refusing to grant Melchor a two-level reduction for acceptance of responsibility in connection with Count 6, to which he pleaded guilty before trial. In *United States v. Ginn*, 87 F.3d 367 (9th Cir.1996), we held that a "defendant is not entitled to an adjustment when he does not accept

---

**2.** In his briefs on appeal, Melchor argues that the court erroneously repeated the definition of conspiracy in Count 1 (Jury Instruction 23) and Count 3 (Jury Instruction 28). However, Counts 1 and 3 are conspiracy counts. It is clear from the record that Melchor intended to challenge the repetition of the introductory language in the *Pinkerton* charges (Jury Instructions 25, 26, and 27).

responsibility for *all of the counts of which he is convicted.*" *Id.* at 370 (emphasis added). Melchor did not accept responsibility for all of the counts of which he was convicted; he is not entitled to the two-level downward adjustment for acceptance of responsibility.

F. *Downward Departure Due to Sentencing Disparity*

Garcia argues that the district court erred in refusing to grant him a downward departure to conform his sentence to those of co-conspirators Jaime Melchor–Duarte and Pablo Ramirez–Melchor, who were sentenced to terms of 151 months and 138 months, respectively. Garcia's argument is unavailing.

We lack jurisdiction to review a district court's discretionary refusal to depart downward from the Guidelines. *United States v. Young,* 988 F.2d 1002, 1004 (9th Cir.1993). The decision whether to depart based on sentence disparity among defendants is properly left within "the sound discretion of the sentencing judge." *United States v. Caperna,* 251 F.3d 827, 832 (9th Cir.2001). The district court entertained argument regarding a downward departure due to sentencing disparity but, in its discretion, declined to depart downward.

AFFIRMED.

---

* The panel unanimously finds this case suitable for decision without oral argument. *See* Fed. R.App. P. 34(a)(2).

** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.