**UNITED STATES of America,**
**Plaintiff—Appellee,**

v.

**Luis C. DOMINGO, Defendant—**
**Appellant.**

**United States of America,**
**Plaintiff—Appellee,**

v.

**Iosefo Nofo SAGOTE, aka, Nofo**
**Defendant—Appellant.**

**United States of America,**
**Plaintiff—Appellee,**

v.

**Packward Kaleilani Toelupe, a.k.a.**
**Pupi, Defendant—Appellant.**

**Nos. 02–10547, 02–10559 and 03–10163.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted May 3, 2004.

Decided June 17, 2004.

Thomas J. Brady, U.S. Attorney's Office, Honolulu, HI, for Plaintiff–Appellee.

DeAnna S. Dotson, Esq., Winston D.M. Ling, Kapolei, HI, Georgia K. McMillen, Esq., Wailuku, HI, David F. Klein, Esq., Honolulu, HI, for Defendants–Appellants.

Before: FARRIS, NOONAN, and RAWLINSON, Circuit Judges.

## MEMORANDUM *

Packward Toelupe, Luis Domingo, and Iosoefo Sagote were found guilty by a jury of multiple drug offenses for their roles in a methamphetamine distribution ring headed by Toelupe, including conspiracy to possess with intent to distribute and dis-

---

\* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

tributing more than 50 grams of methamphetamine, and several counts of aiding and abetting the possession with intent to distribute methamphetamine. Toelupe raises several trial errors and challenges the two consecutive 240 month sentences he received. Domingo and Sagote appeal their 240 month and 60 month sentences. We affirm.

### Toelupe

#### 1. *Wiretaps.*

■ Toelupe contends the district court erred in denying his motion to suppress evidence recovered through numerous wiretaps. Whether the wiretap application satisfies the "full and complete statement of facts" requirement is reviewed de novo while the district court's ruling that the wiretap was necessary is reviewed for abuse of discretion. *United States v. Blackmon*, 273 F.3d 1204, 1207 (9th Cir. 2001). The affidavits requesting the wiretap warrants are extensive. They document that the investigation of the drug conspiracy had been unable to identify the conspiracy's scope or all the major participants because of the necessity of access to oral communications. The affidavits describe numerous other investigated methods that were used or considered. They meticulously and cogently explain why those techniques were not fully successful and were unlikely to uncover needed information because of the risk of detection and because they could not adequately penetrate the conspiracy's inner circle. The required statement of necessity was met. *See United States v. Canales Gomez*, 358 F.3d 1221, 1227 (9th Cir.2004). Although Toelupe contends that the use of informants and "controlled buys" revealed incriminating evidence, the government need not show that informants had been or would be completely useless in order to secure a wiretap. *Id.* at 1226. The affidavits explained that informants had produced diminishing returns and detailed why their continued use was unlikely to reveal necessary information, including the scope of the organization, its suppliers, and the location of its drug "stashes." *See United States v. Shryock*, 342 F.3d 948, 976 (9th Cir.2003) (holding that necessity of wiretap was established despite the use of informants because informants could not determine the full scope of conspiracy).

#### 2. *Prosecutorial Misconduct*

■ The prosecutor did not vouch for witnesses Perosi Niumata and Antererea Tupuloa when he concluded redirect examination of them by stating "as an officer of the court" that they had not mentioned certain people in their grand jury testimony because they were not asked about them. The prosecutor was simply following the practice of impeachment and rehabilitation that had been suggested by the trial court and utilized by defense counsel as a means of expediting the witnesses' testimony. *Cf. United States v. Lopez–Alvarez*, 970 F.2d 583, 597–98 (9th Cir. 1992) (prosecutor is entitled to make a fair response to actions taken by defense counsel). The comments are more akin to offers of proof as to what occurred in the prior proceeding rather than an endorsement of the witnesses' veracity. The prosecutor did not place "the prestige of the government behind the witness[es]," or suggest that "information not presented to the jury supports the witness[es'] testimony." *United States v. Roberts*, 618 F.2d 530, 533 (9th Cir.1980) (citations omitted).

■ However, the prosecutor committed misconduct when, on cross-examination, he repeatedly asked Toelupe whether several government witnesses, including law enforcement agents, had lied. It is improper for a prosecutor to ask questions that compel a witness to give opinions on the veracity of government witnesses.

*United States v. Geston,* 299 F.3d 1130, 1136 (9th Cir.2002) (collecting cases). Toelupe failed to object to the improper questions, which requires him to demonstrate that plain error "affected substantial rights." *Id.* at 1136. Under the plain error standard, a conviction will be reversed "only if, viewed in the context of the entire trial, the impropriety seriously affected the fairness, integrity, or public reputation of judicial proceedings, or where failing to reverse a conviction would result in a miscarriage of justice." *United States v. Tanh Huu Lam,* 251 F.3d 852, 861 (9th Cir.2001) (citation omitted).

The record reflects overwhelming evidence of his guilt, including numerous intercepted conversations in which he is heard discussing his methamphetamine distribution and processing operations, his confession to federal agents that he was a drug dealer who possessed pounds of methamphetamine, as well as the testimony of witnesses who described Toelupe's organization, importation, and distribution activities in substantial detail. Though there was misconduct, it did not require reversal.

### 3. *Admission of Toelupe's Reference to Shooting His Former Wife*

■ Toelupe also argues that the inadvertent admission of an intercepted telephone conversation, in which he is heard saying that he would shoot his former wife over a custody dispute, was so prejudicial that it denied him a fair trial. We reject this argument. Where a jury hears inadmissible evidence, a curative instruction from the judge generally is sufficient to cure any prejudice. *United States v. Escalante,* 637 F.2d 1197, 1202–03 (9th Cir. 1980). The district court gave a strongly-worded curative instruction, telling the jury that the statement was entirely irrelevant and should be disregarded. The

court went a step further by discounting the statement as "all talk" that was not to be taken seriously because it was not a sincere threat. In the face of this admonishment, Toelupe offers no reason to overcome the "strong presumption that the jury followed the court's [curative] instructions." *United States v. Vincent,* 758 F.2d 379, 382 (9th Cir.1985) (citations omitted.)

### 4. *Interference with Direct Examination and Closing Argument.*

■ Toelupe claims the district court denied him a fair trial by interfering with his attorney's direct examination of him, and in limiting closing argument. These contentions are without merit. Toelupe fails to show how the district court abused its discretion or hampered his defense when, outside the jury's presence, it suggested ways that defense counsel could ask more direct and succinct questions. *See United States v. Malcolm,* 475 F.2d 420, 427 (9th Cir.1973) (trial court has discretion to "control[ ] the orderly presentation of the evidence ... and prevent[ ] undue repetition of testimony."); *see also* Fed. R.Evid. 611(a)-(b).

■ Nor did the district court abuse its discretion by prohibiting defense counsel from arguing that the government's failure to present the actual recordings of some of Toelupe's and Domingo's conversations was a weakness in its case as to Counts 17 through 20, or a sign that it was withholding exculpatory evidence. *See Herring v. New York,* 422 U.S. 853, 862, 95 S.Ct. 2550, 45 L.Ed.2d 593 (1975) (noting that district court retains broad discretion over the scope of a closing argument.) The court properly limited the argument. The parties had agreed that transcripts of the conversations could be read to the jury in lieu of playing the actual recordings.

**5.** *Sentencing.*

■ The district court did not err in ruling that Toelupe's offense level for the conspiracy charge of Count 2 was 44, based in part on 24 pounds of methamphetamine that was seized at one or more of the storage places used by the organization. Although Toelupe was acquitted of possessing these drugs in Count 22, "a jury's verdict of acquittal does not prevent the sentencing court from considering conduct underlying the acquitted charge, so long as that conduct has been proved by a preponderance of the evidence." *United States v. Watts*, 519 U.S. 148, 157, 117 S.Ct. 633, 136 L.Ed.2d 554 (1997). Out of caution, the district court applied the much higher "beyond a reasonable doubt" standard to find that Toelupe had knowledge and possession of the methamphetamine, thus satisfying due process. SER Toelupe 597, 600; *see also United States v. Mezas de Jesus*, 217 F.3d 638, 643 (9th Cir.2000) (holding that "clear and convincing" standard of proof is required when a factor has an extremely disproportionate effect on the sentence).

■ The district court did not violate *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), by imposing consecutive 240–month sentences on Counts 2 and 16, despite the lack of a jury finding that Toelupe possessed the 24 pounds of methamphetamine. The court did not exceed the 20–year statutory maximum for either count, *see* 21 U.S.C. § 841(b)(1)(C), but ran the two sentences consecutively under the "stacking" provisions of U.S.S.G. § 5G1.2(d) (2001). *See United States v. Buckland*, 289 F.3d 558, 571–72 (9th Cir.2002). This procedure, even if based on a judge-made drug quantity finding, is consistent with *Apprendi* since each sentence is within its statutory maximum. *Id.* at 571–72.

■ Although unusual, the district court's entry of findings regarding relevant conduct—including Toelupe's connection to the 24 pounds of methamphetamine—was not improper, even though the findings were entered before sentencing. The court afforded Toelupe the opportunity to challenge the preliminary findings, held a hearing at which it heard input on the disputed facts, then entered fresh findings of fact after sentencing. SER Toelupe, 602–666. Notably, the court re-adopted the previously-entered findings after the contested hearing. The district court strictly complied with Fed R.Crim. P. 32(i)(1)(C) and U.S.S.G. § 6A1.3(a) (2002). *See United States v. Houston*, 217 F.3d 1204, 1207 (9th Cir.2000) (requiring "strict compliance" with Fed.R.Crim.P. 32).

**Domingo**

Like Toelupe, Domingo challenges the district court's use of approximately 26 pounds of methamphetamine recovered from two storage locations to calculate his offense level of 38. Similar to Toelupe, he contends the court was required to apply a higher "clear and convincing" standard of proof to use these drugs as relevant conduct in his offender score calculation. *See Mezas de Jesus*, 217 F.3d at 643. As with Toelupe, this argument is moot since the court did apply the higher standard of proof to find that the drug quantity fell within the foreseeable scope of the conspiracy. SER Domingo 349, 351.

■ Nor did the district court commit clear error in finding that the approximately 26 pounds of methamphetamine should be counted in Domingo's offense level. In determining drug quantity for the offense level of a conspiracy, a defendant is "accountable for all quantities of contraband with which he was directly involved," as well as "all reasonably foresee-

able quantities of contraband that were within the scope" of the conspiracy. *United States v. Gamez–Orduno*, 235 F.3d 453, 464 (9th Cir.2000); U.S.S.G. § 1B1.3(a)(1)(B) & cmt. n. 1 (2001). Here, there was evidence that: (1) Domingo was a high level participant in the drug conspiracy, who (2) sold small and medium quantities of methamphetamine for Toelupe over a five-year period, (3) collected drug debts for Toelupe, and, (4) helped Toelupe process pound quantities of the drug. Domingo also was seen at the storage place where most of the 26 pounds of methamphetamine was found. PSR Domingo, ¶¶ 31, 39–40; SER Domingo, 170–71, 173–74, 203–10. The drug quantity was foreseeable and within the scope of Domingo's conspiracy with Toelupe.

The district court also properly denied Domingo's request for a two-level downward departure for accepting responsibility. U.S.S.G. § 3E1.1(a) (2001); *see also United States v. Velasco–Medina*, 305 F.3d 839, 853 (9th Cir.2002) (acceptance of responsibility ruling reviewed for clear error). To receive the adjustment, Domingo was required to accept responsibility for the conduct underlying all charges. *United States v. Ginn*, 87 F.3d 367, 370–71 (9th Cir.1996). He accepted responsibility for delivering methamphetamine as charged in Counts 10–16, but failed to accept any responsibility for his role in the conspiracy that was the subject of Count 2. The court properly denied the adjustment.

**Sagote**

Sagote's challenge to the district court's refusal to grant a downward departure based on "sentencing entrapment" is arguably unreviewable since the court found that the facts did not establish sentence entrapment and exercised its discretion to deny the departure. *See United States v. Wetchie*, 207 F.3d 632, 636 (9th Cir.2000)

(noting that sentencing court's discretionary refusal to depart downward is not reviewable). But even if we review the ruling, there is no factual basis for a finding of sentence entrapment. *See United States v. Staufer*, 38 F.3d 1103, 1106 (9th Cir.1994).

**AFFIRMED.**