**UNITED STATES of America,
Plaintiff–Appellee,**

**v.**

**Dwayne KELLUM, Defendant–
Appellant.**

**United States of America,
Plaintiff–Appellee,**

**v.**

**Dwayne Kellum, Defendant–Appellant.**

**United States of America,
Plaintiff–Appellant,**

**v.**

**Dwayne Kellum, Defendant–Appellee.**

**United States of America,
Plaintiff–Appellant,**

**v.**

**Dwayne Kellum, Defendant–Appellee.**

Nos. 02–50555, 02–50561,
02–50586, 02–50587.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted March 4, 2004.

Filed June 24, 2004.

Jonathan D. Libby, Deputy Federal Public Defender, Los Angeles, CA, for the defendant-appellant/cross-appellee.

Gregory J. Weingart, Assistant United States Attorney, Los Angeles, CA, for the plaintiff-appellee/cross-appellant.

Before SILVERMAN, GOULD, and BEA, Circuit Judges.

GOULD, Circuit Judge.

This appeal presents us with a question of first impression: May a defendant charged under two separate indictments that are later grouped together for sentencing receive a downward adjustment for acceptance of responsibility when he pleaded guilty to the charges in one indictment, but went to trial on the charges in the other indictment? The district court concluded that such a defendant was eligible for a two-level acceptance of responsibility adjustment, the government appeals, and we affirm.

## I

Dr. Jerry H. Buss is the owner of the Los Angeles Lakers professional basketball franchise. Dwayne Kellum is not Dr. Buss. Dwayne Kellum is not Jerry Buss, Jr., a fictional "son" of Dr. Buss invented by Kellum for fraudulent purposes. Dwayne Kellum is not the Los Angeles Lakers' "Senior Vice President." Dwayne Kellum is not a scout for the Lakers. And Dwayne Kellum does not have a two-percent ownership share in the Lakers. Dwayne Kellum was convicted of fraud in this case after pretending to be all of the above personages. To Kellum's detriment, the fraud quickly unraveled upon suspicious inquiry.

To appreciate the legal issue on the government's appeal, we must elaborate this story of deception and comeuppance. In December 1999, Kellum and an accomplice established two accounts at Morgan Stanley Dean Witter ("Morgan Stanley"), one in the name of Jerry Buss, Jr. (the "Buss account"), and the other in the name of Energy Capital (the "Energy Capital account"), a corporation controlled by Kellum. By telephone conversations Kellum presented himself to Morgan Stanley as Jerry Buss, Jr., the son of Dr. Buss, and, so he said, a part-owner and executive of the Los Angeles Lakers.

Kellum proceeded to work a fraud with the following scheme: First, he deposited a stolen California tax refund check payable to Dr. Buss in the Buss account. Second, Kellum and his accomplice tried to transfer money from the Buss account to the Energy Capital account, with the in-

tent thereafter to divert these funds for their personal benefit. Kellum's plot failed when suspicious Morgan Stanley employees contacted the Los Angeles Lakers, were told that Dr. Buss did not have a son named Jerry Buss, Jr., and promptly then alerted the Federal Bureau of Investigation to the scheme. After a deliberate investigation, Kellum was arrested and indicted for conspiracy to possess stolen mail and commit mail fraud, possession of stolen mail, identity theft, and attempted transaction in criminally derived property (the "Buss indictment"). Kellum was later released on bond pending trial, and his release only permitted him to get into more trouble with the law.

While Kellum was free on bond pending trial on the charges in the Buss indictment, a second indictment (the "Fidelity indictment") was filed, charging Kellum with mail fraud, possession and uttering of forged and counterfeit securities, transaction in criminally derived property, and concealment money laundering. These charges arose out of Kellum's alleged cashing and attempted cashing of forged and counterfeit checks through a Fidelity Investments brokerage account. As it turned out, Kellum had deposited other fraudulently gained funds with Fidelity, and had drawn a check from Fidelity to post his bond for release after arrest on the Buss indictment.

Faced with both the Buss indictment and the subsequent Fidelity indictment, Kellum asked the court that he first be tried on the charges alleged in the Fidelity indictment. The government did not object, the Fidelity case went to trial, and Kellum was convicted on eight of the nine counts alleged in that indictment.

After these convictions Kellum voluntarily pleaded guilty to five of the seven charges alleged in the Buss indictment, without entering into a formal plea agreement. The government then moved to dismiss the remaining two Buss indictment counts.

On October 21, 2002, the United States District Court for the Central District of California held a combined sentencing hearing for Kellum on the Buss and Fidelity indictments. In a sentencing memorandum, Kellum argued, *inter alia*, that he was entitled to a reduction in his combined offense level for acceptance of responsibility by his guilty plea to five charges in the Buss indictment. The district court agreed and granted Kellum a two-level downward offense level adjustment pursuant to § 3E1.1(a) of the United States Sentencing Guidelines ("Sentencing Guidelines"). Based on the Sentencing Guidelines, the district court sentenced Kellum to an 85 month term of imprisonment.

On appeal, the government contends that the district court misapprehended the law of acceptance of responsibility, and erred in granting Kellum the two-level downward adjustment based on Kellum's plea of guilty to the charges in the Buss indictment, after Kellum's dispute of charges and unsuccessful trial on the Fidelity indictment. We have jurisdiction on the government's appeal under 18 U.S.C. § 3742(b), and we reject the government's position, affirming the district court on this issue.[1]

## II

We review for clear error the factual determinations underlying a dis-

---

**1.** In this opinion, we discuss solely the government's appeal of the district court's downward adjustment of Kellum's sentence for acceptance of responsibility. The government's appeal of this issue was a cross-appeal after

Kellum had appealed on multiple grounds his convictions on the Fidelity indictment. We affirm Kellum's convictions in a memorandum disposition filed simultaneously with this opinion.

trict court's conclusion that a criminal defendant has accepted responsibility for his crimes. *United States v. Bazuaye,* 240 F.3d 861, 863 (9th Cir.2001); *see also* U.S.S.G. § 3E1.1 application note 5 ("The sentencing judge is in a unique position to evaluate a defendant's acceptance of responsibility. For this reason, the determination of the sentencing judge is entitled to great deference on review."). A district court's interpretation and application of the law of acceptance of responsibility is reviewed de novo. *United States v. Hock,* 172 F.3d 676, 681 (9th Cir.1999).

## III

■ The government contends that it was error for the district court to grant Kellum a two-level downward sentencing adjustment because Kellum did not accept responsibility for all of the charges on which he was sentenced. Although Kellum pled guilty to all of the charges in the Buss indictment, he did so only after his trial conviction on eight of the nine counts charged in the Fidelity indictment. Because Kellum's Buss and Fidelity indictment convictions were grouped for purposes of sentencing, the government relies on our prior decision in *United States v. Ginn,* 87 F.3d 367 (9th Cir.1996), and on the provisions of the Sentencing Guidelines bearing on the grouping of charges, U.S.S.G. §§ 3D1.2, 5G1.2, to support the position that Kellum did not meet the Sentencing Guideline requirements for acceptance of responsibility.

Although we reject the government's position, we do not do so out of hand. The government presents a spirited argument, and the law heretofore has not been crystal clear on this aspect of acceptance of responsibility. We find no precedent in our Circuit or any other Circuit squarely addressing the issue raised by the government. Thus our analysis proceeds from consideration of the text of the Sentencing Guidelines, and our related assessment of the spirit and purpose of those guidelines as applied to the issue presented.

Section 3E1.1 of the Sentencing Guidelines provides that a criminal defendant is eligible to have his guideline offense level decreased by two levels where "the defendant clearly demonstrates acceptance of responsibility for his offense." U.S.S.G. § 3E1.1(a).[2] The central reason for such a reduction is simply stated: The eligibility for decreased sentence upon acceptance of responsibility is aimed at encouraging those accused of crime to come clean, to admit their wrongdoing, and to spare the government the expense, burden, and risk of prosecuting them. *See, e.g., United States v. Bonanno,* 146 F.3d 502, 512–13 (7th Cir.1998) (recognizing that the "central purpose for the acceptance of responsibility statute" is "to reward those who plead guilty—saving the judiciary and Government from the time, expense and effort of trial") (internal quotation marks omitted).

Our recital of the text of the Sentencing Guidelines and the benign aim of this provision does not, however, answer the question posed by the government as to the scope of the principle. As the government sees it, when cases are grouped for sentencing pursuant to the guidelines, one

---

**2.** The application notes to this section clarify some appropriate considerations for determining whether a defendant has accepted responsibility for crimes charged. These considerations include the defendant "truthfully admitting the conduct comprising the offense(s) of conviction, and truthfully admitting or not falsely denying any additional relevant conduct." *Id.,* application note 1(a). Further, "[e]ntry of a plea of guilty prior to the commencement of trial combined with truthfully admitting the conduct comprising the offense of conviction ... will constitute significant evidence of acceptance of responsibility." *Id.,* application note 3.

does not accept responsibility unless it is for the whole bundle of charges pressed by the government; if the government has to go to trial to get what it perceives as justice, then its view is that there is no eligibility for "acceptance of responsibility."

In *United States v. Ginn*, urged by the government to support its position, we addressed whether a defendant who pleads guilty to certain charges in an indictment, but who is convicted after trial on other charges in the same indictment, is eligible for an acceptance of responsibility reduction. Looking to the plural use of the word "offense(s)" in the phrase "offense(s) of conviction" in application note 1(a) to § 3E1.1, we held that "a defendant is not entitled to an adjustment when he does not accept responsibility for all of the counts on which he is convicted." *Ginn*, 87 F.3d at 370. Because the defendant in *Ginn* had maintained his innocence and proceeded to trial on some counts on which he had been indicted in a single indictment, we concluded that he could not avail himself of the § 3E1.1 acceptance of responsibility reduction.

*Ginn* gives some force to the government's argument, but in the context of this case we conclude that it is not enough to carry the day. Unlike the defendant in *Ginn*, here Kellum pleaded guilty to all of the charges in the Buss indictment.[3] It is significant that this Buss indictment and the Fidelity indictment had not been consolidated for trial. Kellum caved after his loss in the Fidelity case. By pleading guilty thereafter on the entire Buss indictment, except for claims dismissed by the government, Kellum saved the government the expense and burden, as well as the risk, of trial.

Notwithstanding, the government contends that the rationale of *Ginn* should be extended to support the conclusion that Kellum is not eligible for an acceptance of responsibility reduction because the government for this purpose would have us consider together the charges in the Buss and Fidelity indictments. The government's contention is premised on grouping of the Buss and Fidelity indictments for sentencing. The Sentencing Guidelines provide that certain "closely related counts" must be considered in "groups" when calculating a defendant's offense level. *See* U.S.S.G. § 3D1.2. These groups include crimes for which "the offense level is determined largely on the basis of the total amount of harm or loss." *Id.*, § 3D1.2(d). Relying on extra-circuit authority, the government asserts that grouping was mandatory under the Sentencing Guidelines for the charges in the Buss and Fidelity indictments, even though these indictments arose out of separate conduct with unrelated victims. *See, e.g., United States v. Tolbert*, 306 F.3d 244, 246–48 (5th Cir.2002) ("[G]rouping is required for offenses charged in different indictments but for which the defendant is being sentenced in a single proceeding."); *United States v. Griggs*, 47 F.3d 827, 832 (6th Cir.1995) (holding that the "only logical reading" of the Sentencing Guidelines is that grouping must apply to counts charged in separate indictments but for which sentencing occurs in a consolidated proceeding). The government asserts that it follows that under *Ginn* Kellum is not eligible for an acceptance of responsibility adjustment without having accepted responsibility for all of the charges on which he was sentenced.[4]

---

**3.** Although Kellum was indicted on seven counts in the Buss case, the government dropped two of the charges upon Kellum's guilty plea on the other five counts, leaving no counts open for trial.

**4.** At Kellum's sentencing hearing the district court made clear that it believed that Kellum

Whether grouping was mandatory in this case is an issue we need not resolve. Even if we were to assume that the government is correct in asserting that grouping was mandatory under the Sentencing Guidelines, we would still conclude that Kellum is eligible for an acceptance of responsibility reduction based upon his guilty plea to the Buss indictment.

As we have explained, the Sentencing Guidelines suggest that a reason for a downward adjustment to offense level for accepting responsibility is to save government resources. The government benefits when defendants have incentive to accept guilt without trial. To this end, the application notes to § 3E1.1 provide that the acceptance of responsibility adjustment "is not intended to apply to a defendant who puts the government to its burden of proof at trial by denying the essential factual elements of guilt, is convicted, and only then admits guilt and expresses remorse." U.S.S.G. § 3E1.1, application note 2. Our prior decisions have also recognized this rationale, *see, e.g., United States v. Day*, 285 F.3d 1167, 1172 (9th Cir.2002) (quoting U.S.S.G. § 3E1.1, application note 2); *United States v. McKittrick*, 142 F.3d 1170, 1178 (9th Cir.1998) (same), as have decisions by our sister circuits, *see, e.g., United States v. Beserra*, 967 F.2d 254, 256 (7th Cir.1992) (stating that the framers of the sentencing guidelines created the acceptance of responsibility adjustment because they "wanted to encourage the guilty to plead guilty in order to save the government and the judiciary the costs of trial"); *United States v. Gonzalez*, 70 F.3d 1236,

1239–40(11th Cir.1995) (affirming denial of acceptance of responsibility adjustment where defendant "required the district court to expend additional resources conducting a bench trial").

The acceptance of responsibility provision of the Sentencing Guidelines, in light of its purposes, should permit Kellum to receive an acceptance of responsibility adjustment because he pleaded guilty to the charges in the Buss indictment, saving the government and judiciary the time and expense of proceeding to trial on that indictment. These benefits to the government are not wholly negated by Kellum's prior venture in trial on the Fidelity indictment, nor are the benefits insubstantial. We hold that it is not clear error for a district court to grant a defendant charged in two separate indictments later grouped for sentencing a downward adjustment for acceptance of responsibility if the defendant pleads guilty to all charges in one indictment, save for those dismissed agreeably by the government, even if the defendant goes to trial on the charges in the other indictment.

**AFFIRMED.**

---

had accepted responsibility for the charges in the Buss indictment, but had not accepted responsibility for the Fidelity indictment charges. This position was evidenced in the following colloquy between government counsel and the court:

> Government Counsel: "And with regard to acceptance [of responsibility] the Court I

take it is accounting for the fact of the guilty plea in the Buss [ ] case, but believing that the defendant did not accept responsibility in the Fidelity investments case?"
> The Court: "That's exactly correct."

Thus, if we were to accept the government's contention, we would agree that the district court could not consider Kellum eligible for an acceptance of responsibility reduction.