**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 12-10467 |
| Plaintiff - Appellee, | D.C. No. 4:10-CR-03578-DCB-HCE-1 |
| v. | |
| PHILLIP ERNEST NARUM, | MEMORANDUM[*] |
| Defendant - Appellant. | |

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 12-10658 |
| Plaintiff - Appellee, | D.C. No. 4:10-CR-03578-DCB-HCE-1 |
| v. | |
| PHILLIP ERNEST NARUM, | |
| Defendant - Appellant. | |

Appeal from the United States District Court
for the District of Arizona
David C. Bury, District Judge, Presiding

Argued and Submitted May 13, 2014
San Francisco, California

---

[*]    This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

Before: D.W. NELSON, McKEOWN, and M. SMITH, Circuit Judges.

Phillip Narum pled guilty to two counts of filing a false tax return and one count of failure to file an income tax return, and was found guilty of fourteen counts of wire fraud after a jury trial. Narum received principally a 48-month sentence and was ordered to pay $632,685.99 in restitution to Michael Young and Bryant Young. Narum appeals his wire fraud convictions, his sentence, and his restitution order. We have jurisdiction under 28 U.S.C. § 1291, and we reverse in part, affirm in part, vacate in part, and remand for further proceedings.

Narum first argues that the district court erred by admitting into evidence all transfers of money from Young & Sons' accounts to Narum, including money he received pursuant to the terms of his employment contracts. We reject this argument. The charged wire fraud is inextricably intertwined with Narum's employment history with Young & Sons and the transfers of money from the company to Narum. *United States v. King*, 200 F.3d 1207, 1215 (9th Cir. 1999); *United States v. Vizcarra-Martinez*, 66 F.3d 1006, 1012–13 (9th Cir. 1995).

Narum next argues that we should reverse his conviction for counts 1, 2, and 6 of the indictment, which charged Narum with wire fraud arising out of transfers from his personal bank account to pay for a dragster and dragster parts. We agree.

2

Once Narum converted Young & Sons' funds by transferring them to his personal bank account, his subsequent use of the wires to buy dragsters was not in furtherance of his scheme to defraud, but instead was meant to allow him to enjoy the fruits of his crime. *United States v. Redcorn*, 528 F.3d 727, 739 (10th Cir. 2008). The conduct charged in counts 1, 2, and 6 thus does not constitute wire fraud as a matter of law. *United States v. McNeil*, 320 F.3d 1034, 1040 (9th Cir. 2003) ("Wire fraud has three elements: a scheme to defraud, use of the wires in furtherance of the scheme, and the specific intent to defraud."). We reject the government's contention that a wire fraud conviction may be based on any wire transfer taking place during the time period encompassed by the scheme to defraud. Wire fraud requires a use of the wires *in furtherance* of a scheme to defraud, not merely a use of the wires *during* a scheme to defraud.

Narum next argues that there was insufficient evidence to convict him of wire fraud based on his use of the Young & Sons credit card for personal expenses. We reject this argument. Although Narum contends that he intended to repay Young & Sons and that his personal use of the company card was therefore authorized, viewed in the light most favorable to the prosecution, a rational jury was free to reject this argument and conclude Narum never intended to repay the

company.  *United States v. Inzunza*, 638 F.3d 1006, 1013 (9th Cir. 2011) (amended opinion).

Turning to sentencing, Narum argues that the district court erred by grouping Narum's wire fraud and tax convictions under U.S.S.G. § 3D1.2, and by denying Narum a reduction for acceptance of responsibility for pleading guilty to the tax counts.  We reject these arguments.  The counts were properly grouped because "one of the counts embodies conduct that is treated as a specific offense characteristic in, or other adjustment to, the guideline applicable to another of the counts."  U.S.S.G. § 3D1.2(c).  Specifically, the tax counts were subject to a two-level enhancement due to the conduct underlying the wire fraud, because the fraudulently derived income Narum failed to report was from a "source of income exceeding $10,000 in any year from criminal activity."  *Id.* § 2T1.1(b)(1).  Since Narum did not plead guilty to all of the properly grouped offenses, he was not entitled to an acceptance of responsibility adjustment.  *United States v. Ginn*, 87 F.3d 367, 370 (9th Cir. 1996) ("[A] defendant is not entitled to an adjustment when he does not accept responsibility for all of the counts of which he is convicted."); *United States v. Garrido*, 596 F.3d 613, 618–19 (9th Cir. 2010) (limiting *Ginn* in cases where counts are grouped separately and it is thus "possible to calculate acceptance of responsibility for each separate offense").

4

Finally, Narum argues that the district court erroneously calculated restitution and loss by (1) undervaluing Narum's work on the Copper Hills Project, (2) failing to credit him the full $500,000 he was purportedly owed under his second written employment contract, and (3) concluding that the restitution and loss figures included the excess pay he received prior to the date he obtained signatory authority over the Young & Sons accounts. We reject the first argument. While Narum points out that the government submitted inconsistent valuations of this work at different points in the case, the district court's restitution order carefully explains these inconsistencies, and its final valuation did not constitute clear error. *United States v. Lawrence*, 189 F.3d 838, 844 (9th Cir. 1999). We also reject the second argument. Narum's second written employment contract contemplated that he would be paid $100,000 per year, and Bryant Young testified that he did not approve payments in excess of that amount. We agree, however, with Narum's third argument. According to the testimony at trial, all payments Narum received prior to the date he obtained signatory authority were approved by Bryant Young, and there was no evidence that Narum obtained this approval by fraud. Instead, the evidence merely showed that Narum asked for money beyond what he was due under his contract, and that Young gave him the money. Thus,

5

the excess payments Narum received prior to obtaining signatory authority over Young & Sons' accounts were not obtained through Narum's scheme to defraud.

Although the district court's loss figure was therefore inflated, the error was not material to the district court's application of the Guidelines. Subtracting the pre-signatory authority overpayments from the district court's computation of loss could not yield a loss figure below $400,000, leading to the same base offense level the district court used in its determination of Narum's Guidelines sentence. Thus, we affirm Narum's sentence of 48 months. The restitution figure, however, should be reduced to exclude the pre-signatory authority excess payments approved by Young. We remand for further proceedings to allow the district court to calculate the precise amount of this reduction, allocate the reduction between Michael Young and Bryant Young, and then reenter a restitution order against Narum.

Accordingly, we **REVERSE** Narum's convictions on counts 1, 2, and 6 of the indictment, **AFFIRM** Narum's remaining conviction and sentence, **VACATE** the district court's order directing Narum to pay restitution to Michael Young and Bryant Young, and **REMAND** for further proceedings consistent with this disposition.

6